# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ALAN N. VARA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:22-cv-01180 |
| | ) MSN-IDD |
| SKANSKA USA BUILDING INC. D/B/A | ) |
| SKANSKA, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT STIPULATION OF SETTLEMENT AND SETTLEMENT AGREEMENT

This Joint Stipulation of Settlement and Settlement Agreement ("Agreement") is made and entered into by and among Brother's Mechanical, Inc. ("BMI"), Skanska USA Building Inc. d/b/a Skanska. ("Skanska") (collectively referred to as "Contractors"), and Alan Vara ("Plaintiff"), collectively the "Parties," for the purposes of resolving and settling the claims amongst the Parties in *Vara, et al. v. Skanska USA Building Inc. d/b/a Skanska, et al.*, Civil Action No. 1:22-cv-01180, filed in the United States District Court for the Eastern District of Virginia ("Lawsuit").

**WHEREAS**, Plaintiff filed a Lawsuit against Contractors, as well as DayCJ Plumbing & Mechanical, Inc. and Edgar Jimenez, to collect allegedly unpaid wages, plus statutory damages, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 ("VWPA"), and the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA") for work performed at the Scotts Run Commercial and Residential Complex in Tysons Corner, Virginia ("the Project").

**WHEREAS**, Skanska filed a cross-claim in the Lawsuit against BMI demanding pursuant to BMI's subcontract with Skanska for the Project ("Subcontract") that BMI defend, indemnify and hold harmless Skanska against any and all damages arising out of Plaintiff's claims, including Skanska's attorneys' fees and costs.

**WHEREAS**, the Parties desire to resolve and settle all claims that Plaintiff has or may have against Contractors arising from this Lawsuit;

**WHEREAS,** BMI has agreed to pay the gross amount of $186,267.50 to all of the Plaintiffs in the Lawsuit, which will be deposited into Plaintiffs' Counsel's client trust account within twenty-four hours of execution of each Plaintiff's settlement agreement, to be distributed to the Plaintiffs only if the Court approves the Approval Motion and, if the Approval Motion is not approved by the Court, the gross sum of $186,267.50 will be returned to BMI;

**NOW, THEREFORE**, in consideration of the covenants, mutual promises, and agreements and payment contained in this Agreement and intending to be legally bound, the Parties agree as follows:

1. **No Admission**. Contractors have entered into this Agreement to avoid the expense, uncertainty, and delay of further litigation. Contractors expressly deny that they are separately or jointly liable or owe any unpaid wages or other damages to Plaintiff or anyone else with respect to the alleged facts or causes of actions which were asserted, or could have been asserted, in the Lawsuit. In no event shall this Agreement be used as evidence of liability or wrongdoing by Contractors.

2. **Payment and Representation by Contractors**. In consideration for the terms and actions outlined in this Agreement, BMI, within twenty-four hours of the full execution of this Agreement, will pay to Plaintiff's Counsel the gross amount of $26,112.50 ("Settlement Amount"), representing:

   a.   $10,175.00 in unpaid wages; and

   b.   $15,937.50 in liquidated damages, which shall be treated as non-wage income.

The gross amount of $26,112.50 will be held by Plaintiff's Counsel in its client trust fund account ("Client's Trust") and will be distributed to Plaintiff within forty-eight hours of the issuance by the Court of a Final Approval Order approving the Agreement and prior to the Plaintiffs filing a notice dismissing claims against Contractors with prejudice. Furthermore, prior to the issuance of payment from Plaintiff's client trust account to the Plaintiff, BMI may request that Plaintiff provide BMI with an I.R.S. Form W-4, as well as an I.R.S. Form W-9. However, BMI agrees that it will make payment to Plaintiff irrespective of Plaintiff's completion and production of an I.R.S. Form W-4 and/or an I.R.S. Form W-9. Furthermore, BMI agrees that Plaintiff may provide, and BMI will accept, an I.R.S Form W-9 solely for purposes of the non-wage income payment of $15,937.50 without regard to Plaintiff completion and production of an I.R.S. Form W-4. BMI further agrees that it shall notify Plaintiff's Counsel of any mandatory tax withholding resulting from these payments and Plaintiff's Counsel shall return such amounts to BMI out of the gross payment amount held in Plaintiff's Client Trust.

The checks will be made out to O'Donoghue & O'Donoghue LLP to be deposited into a client trust account and mailed to Andrew Costa-Kelser, O'Donoghue & O'Donoghue LLP, 5301 Wisconsin Avenue NW, Suite 800, Washington, DC 20015, by overnight mail. This payment is in consideration for the promises and commitments set forth in this Agreement and is in full and final resolution of Plaintiff's claims against Contractors in the Lawsuit, and all claims Plaintiff has brought or could have brought against Contractors under FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, including for any award of attorneys' fees and costs, for work performed on the Project, up until the date of this Agreement.

Under no circumstances shall Skanska be obligated to make payment to Plaintiff of the aforementioned amounts, should BMI fail to do so.

BMI further agrees to defend, indemnify and hold harmless Skanska for all reasonable attorneys' fees and costs incurred in connection with the Lawsuit and the Counterclaim, which amounts shall be paid from amounts specifically withheld by Skanska against the balance due to BMI under the Subcontract entered into with Skanska that have been expressly identified as withholdings related to the Lawsuit and the Counterclaim ("Withheld Funds"), which are separate and distinct from Subcontract retainage. Skanska agrees to pay to BMI the Withheld Funds, less the reasonable attorneys' fees and costs incurred by Skanska in connection with the Lawsuit and the Counterclaim within 5 days after BMI pays funds due to Plaintiff.

3.      **Release**. In consideration for the promises and commitments set forth in this Agreement, including the payment provided in Section 2 of this Agreement, Plaintiff hereby releases and forever discharges Contractors, their subsidiaries and affiliates, officers, directors, insurers and successors and assigns of each, of and from any and all claims, obligations or causes of action for equitable relief, compensatory, punitive or other damages, employee benefits, expenses (including attorneys' fees and costs), reimbursements or compensation of any kind, arising under FLSA, VWPA, VOWA, and any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, for work performed on the Project, up until the date of this Agreement.

Plaintiff understands that by entering into this Agreement they are waiving the right to file a charge, lawsuit, complaint, or arbitration to assert any claim for additional relief against Contractors for any of these released claims under the FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law.

Plaintiff further agrees that they will withdraw any other pending charges, lawsuits, complaints, or arbitrations against Contractors, including any complaints made by Plaintiff to the Virginia Department of Labor and Industry, raising allegations for relief based upon any claim released in this Agreement. However, nothing herein shall prevent Plaintiff from filing an administrative claim in the future with any government agency under FLSA, VWPA, and VOWA. Provided, however, Plaintiff further agrees that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted, settled, or released in the Lawsuit that may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Contractors related to the Project.

This Agreement also shall not apply to claims for unemployment compensation benefits and any other claim that is not waivable as a matter of law. Plaintiff is not releasing claims that may arise in the future and other claims that cannot be released as a matter of law.

4.      **Settlement Approval, Settlement Timeline, and Mutual Cooperation**. The Parties agree that this Agreement is contingent upon its receiving final approval from the Court and becoming effective, and agree to the following timeline for seeking approval of the Agreement, completion of the settlement, and dismissal of the causes of action amongst the Parties in the Lawsuit:

a.      Within twenty-four hours of the full execution of this Agreement, BMI will send two checks totaling $26,112.50 to Plaintiff's counsel, as outlined in Section 2, *provided* that such monies will only be distributed to Plaintiff upon the Court's approval of a Motion for Approval of Settlement (the "Approval Motion"), as described below.

b.      Within fourteen (14) days of the full execution of this Agreement, Counsel for Plaintiff shall file a Motion for Approval of Settlement (the "Approval Motion"). Plaintiff's counsel will provide Contractors' Counsel with a draft of the Approval Motion for review and comment as soon as practicable and, in any event, no fewer than seven (7) days before filing it with the Court. Plaintiff will agree to make any reasonable edits proposed by Contractors before filing. Contractors agree not to oppose the Approval Motion should their proposed edits be incorporated. Along with the Approval Motion, Plaintiff's counsel also will file the Agreement and a Proposed Final Approval Order. Among other things, the Approval Motion will ask the Court to issue and enter a Final Approval Order, which will: (i.) approve the Settlement as a fair and reasonable resolution of *bona fide* disputes under the FLSA, (ii.) incorporate the terms of this Agreement, and (iii.) upon distribution from Plaintiff's Client Trust to Plaintiff of the of payment contemplated by Section 2, dismiss Plaintiff's claims against Contractors with prejudice and enter a final judgment with respect to the same consistent with the terms of this Agreement.

c.      This Agreement shall become effective upon the issuance by the Court of a Final Approval Order approving the settlement agreement, distribution from Plaintiff's Client Trust to Plaintiff of the payment contemplated by Section 2, dismissing Plaintiff's claims against Contractors with prejudice, and entering a final judgment with respect to the same consistent with the terms of this Agreement (the "Effective Date"). To the extent the Court fails to grant approval to the Agreement, or in the event that any appeal results in the settlement being found to be invalid, this Agreement will be null and void for all purposes in its entirety, subject to the provisions and procedures set forth in Section 5, *infra*.

d.      Within twenty-four hours of the clearance of the checks from Plaintiff's Client Trust, Plaintiff's counsel shall file a notice dismissing claims against Contractors with prejudice.

e.      Within seven (7) days of the Effective Date, in exchange for BMI's agreement to pay the amounts set forth in Section 2 including its agreement that Skanska's reasonable attorneys' fees and costs shall be paid from the Withheld Funds and Skanska's agreement to pay BMI the remaining Withheld Funds, and Plaintiff's agreement to dismiss the claims against Skanska with prejudice, Skanska agrees to dismiss its cross-claims against BMI in the Lawsuit without prejudice. The terms of the Subcontract are continuing in nature and shall remain in full force and effect, and unless expressly stated herein are not modified by this Agreement.

f.      The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement. The Parties shall use their reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiff's Counsel shall, with the assistance and cooperation of Contractors and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

5.      **Termination of the Agreement**. Plaintiff or Contractors may terminate the Agreement if the Court declines to enter a Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or the Agreement does not become final for any other reason, provided that the Parties agree to work cooperatively and in good faith for a period of thirty (30) days, to address and resolve any concerns identified by the Court in declining to enter a Final Approval Order or a settlement in the form submitted by the Parties.  To terminate this Agreement on the grounds specified above, the terminating Counsel (*i.e.*, Plaintiff's attorneys or counsel for either Contractor) shall give written notice to all other counsel no later than sixty (60) days after the relevant court action.  In the event that this Agreement is terminated, or the settlement is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court, the Agreement and the releases contained herein shall be terminated and shall have no force or effect, Plaintiff's counsel shall return the Settlement Amount to BMI, neither Contractor shall have any obligation to make any payments under the Agreement, and no Party shall be bound by any of its terms.

6.      **Non-Appeal.**  Plaintiff and the Contractors each agree that none of them shall file any appeal of the Court's Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or otherwise challenge such an approval order.

7.      **Prohibition on Press and Publicity Prior to Court Approval**. The Parties shall keep the terms of this Agreement confidential until Plaintiff files the Approval Motion, as set forth in Section 4.a, *supra*. Prior to Court approval, the Parties and their counsel agree that they will not (i.) issue a press release, disclose to, or otherwise notify the media about the terms of the proposed settlement agreement; and/or (ii.) advertise any of the terms of the proposed settlement agreement through written, recorded, or electronic communication. To the extent that the Parties and/or their respective counsel are contacted by the media about this Agreement and/or the settlement it memorializes prior to Plaintiff filing the Approval Motion, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a tentative settlement subject to court approval, and that the Parties and their counsel believe they have reached a fair and reasonable settlement of the disputed claims.

The foregoing notwithstanding, at any time, including prior to Court Approval, the Parties also shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings or administrative actions in other matters a summary of the terms of this Agreement. Similarly, at any time, including prior to Court approval, Plaintiff also shall have the right to

disclose the Agreement to her tax and legal advisors and spouse (if any). For avoidance of doubt, the Parties agree that nothing in this section prevents a Party from disclosing the terms of this Agreement subsequent to Court Approval of the Approval Motion filed by Plaintiff.

The Parties further agree that nothing in this section prevents a Party from moving to enforce this Agreement.

8.      **Arm's Length Transaction**. The terms and conditions of this Agreement are the result of arm's-length negotiations between the Parties. Accordingly, this Agreement is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

9.      **No Assignment**. Plaintiff, BMI, and Skanska represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action, and any attempt to do so shall be of no force or effect.

10.     **Non-Precedential**. This Agreement does not set a precedent for any other dispute between the parties, and may not be referenced or introduced by any party in any other proceeding, except one involving Plaintiff.

11.     **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Virginia, without regard to choice of law principles, except to the extent that the laws of the United States governs any matter set forth herein, in which case such federal law shall govern.

12.     **Entire Agreement**. The Parties understand that this Agreement constitutes the entire agreement among Plaintiff and Contractors with respect to the subject matter thereof.

13.     **Waivers and Modifications**. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment.  Any failure by any Party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14.     **Counterparts**. This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute the same agreement.

[*SIGNATURES ON FOLLOWING PAGE*]

**Alan Vara**

Dated: 04/13/23

**Brother's Mechanical, Inc.**

Dated: 4/17/23

**Skanska USA Building Inc. d/b/a Skanska**

Dated: 4/17/23

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| ALAN N. VARA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:22-cv-01180 |
| | ) MSN-IDD |
| SKANSKA USA BUILDING INC. D/B/A | ) |
| SKANSKA, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT STIPULATION OF SETTLEMENT AND SETTLEMENT AGREEMENT

This Joint Stipulation of Settlement and Settlement Agreement ("Agreement") is made and entered into by and among Brother's Mechanical, Inc. ("BMI"), Skanska USA Building Inc. d/b/a Skanska. ("Skanska") (collectively referred to as "Contractors"), and Alejandra Torres ("Plaintiff"), collectively the "Parties," for the purposes of resolving and settling the claims amongst the Parties in *Vara, et al. v. Skanska USA Building Inc. d/b/a Skanska, et al.*, Civil Action No. 1:22-cv-01180, filed in the United States District Court for the Eastern District of Virginia ("Lawsuit").

**WHEREAS**, Plaintiff filed a Lawsuit against Contractors, as well as DayCJ Plumbing & Mechanical, Inc. and Edgar Jimenez, to collect allegedly unpaid wages, plus statutory damages, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 ("VWPA"), and the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA") for work performed at the Scotts Run Commercial and Residential Complex in Tysons Corner, Virginia ("the Project").

**WHEREAS**, Skanska filed a cross-claim in the Lawsuit against BMI demanding pursuant to BMI's subcontract with Skanska for the Project ("Subcontract") that BMI defend, indemnify and hold harmless Skanska against any and all damages arising out of Plaintiff's claims, including Skanska's attorneys' fees and costs.

**WHEREAS**, the Parties desire to resolve and settle all claims that Plaintiff has or may have against Contractors arising from this Lawsuit;

**WHEREAS,** BMI has agreed to pay the gross amount of $186,267.50 to all of the Plaintiffs in the Lawsuit, which will be deposited into Plaintiffs' Counsel's client trust account within twenty-four hours of execution of each Plaintiff's settlement agreement, to be distributed to the Plaintiffs only if the Court approves the Approval Motion and, if the Approval Motion is not approved by the Court, the gross sum of $186,267.50 will be returned to BMI;

     **NOW, THEREFORE**, in consideration of the covenants, mutual promises, and agreements and payment contained in this Agreement and intending to be legally bound, the Parties agree as follows:

     1.    **No Admission**. Contractors have entered into this Agreement to avoid the expense, uncertainty, and delay of further litigation. Contractors expressly deny that they are separately or jointly liable or owe any unpaid wages or other damages to Plaintiff or anyone else with respect to the alleged facts or causes of actions which were asserted, or could have been asserted, in the Lawsuit.  In no event shall this Agreement be used as evidence of liability or wrongdoing by Contractors.

     2.    <u>**Payment and Representation by Contractors**</u>. In consideration for the terms and actions outlined in this Agreement, BMI, within twenty-four hours of the full execution of this Agreement, will pay to Plaintiff's Counsel the gross amount of $624.00 ("Settlement Amount"), representing:

         a.    $208.00 in unpaid wages; and

         b.    $416.00 in liquidated damages, which shall be treated as non-wage income.

     The gross amount of $624.00 will be held by Plaintiff's Counsel in its client trust fund account ("Client's Trust") and will be distributed to Plaintiff within forty-eight hours of the issuance by the Court of a Final Approval Order approving the Agreement and prior to the Plaintiffs filing a notice dismissing claims against Contractors with prejudice. Furthermore, prior to the issuance of payment from Plaintiff's client trust account to the Plaintiff, BMI may request that Plaintiff provide BMI with an I.R.S. Form W-4, as well as an I.R.S. Form W-9.  However, BMI agrees that it will make payment to Plaintiff irrespective of Plaintiff's completion and production of an I.R.S. Form W-4 and/or an I.R.S. Form W-9.  Furthermore, BMI agrees that Plaintiff may provide, and BMI will accept, an I.R.S Form W-9 solely for purposes of the non-wage income payment of $416.00 without regard to Plaintiff completion and production of an I.R.S. Form W-4.  BMI further agrees that it shall notify Plaintiff's Counsel of any mandatory tax withholding resulting from these payments and Plaintiff's Counsel shall return such amounts to BMI out of the gross payment amount held in Plaintiff's Client Trust.

     The checks will be made out to O'Donoghue & O'Donoghue LLP to be deposited into a client trust account and mailed to Andrew Costa-Kelser, O'Donoghue & O'Donoghue LLP, 5301 Wisconsin Avenue NW, Suite 800, Washington, DC 20015, by overnight mail. This payment is in consideration for the promises and commitments set forth in this Agreement and is in full and final resolution of Plaintiff's claims against Contractors in the Lawsuit, and all claims Plaintiff has brought or could have brought against Contractors under FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, including for

any award of attorneys' fees and costs, for work performed on the Project, up until the date of this Agreement.

Under no circumstances shall Skanska be obligated to make payment to Plaintiff of the aforementioned amounts, should BMI fail to do so.

BMI further agrees to defend, indemnify and hold harmless Skanska for all reasonable attorneys' fees and costs incurred in connection with the Lawsuit and the Counterclaim, which amounts shall be paid from amounts specifically withheld by Skanska against the balance due to BMI under the Subcontract entered into with Skanska that have been expressly identified as withholdings related to the Lawsuit and the Counterclaim ("Withheld Funds"), which are separate and distinct from Subcontract retainage.  Skanska agrees to pay to BMI the Withheld Funds, less the reasonable attorneys' fees and costs incurred by Skanska in connection with the Lawsuit and the Counterclaim within 5 days after BMI pays funds due to Plaintiff.

3.     **Release**. In consideration for the promises and commitments set forth in this Agreement, including the payment provided in Section 2 of this Agreement, Plaintiff hereby releases and forever discharges Contractors, their subsidiaries and affiliates, officers, directors, insurers and successors and assigns of each, of and from any and all claims, obligations or causes of action for equitable relief, compensatory, punitive or other damages, employee benefits, expenses (including attorneys' fees and costs), reimbursements or compensation of any kind, arising under FLSA, VWPA, VOWA, and any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, for work performed on the Project, up until the date of this Agreement.

Plaintiff understands that by entering into this Agreement they are waiving the right to file a charge, lawsuit, complaint, or arbitration to assert any claim for additional relief against Contractors for any of these released claims under the FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law.

Plaintiff further agrees that they will withdraw any other pending charges, lawsuits, complaints, or arbitrations against Contractors, including any complaints made by Plaintiff to the Virginia Department of Labor and Industry, raising allegations for relief based upon any claim released in this Agreement. However, nothing herein shall prevent Plaintiff from filing an administrative claim in the future with any government agency under FLSA, VWPA, and VOWA. Provided, however, Plaintiff further agrees that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted, settled, or released in the Lawsuit that may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Contractors related to the Project.

This Agreement also shall not apply to claims for unemployment compensation benefits and any other claim that is not waivable as a matter of law. Plaintiff is not releasing claims that may arise in the future and other claims that cannot be released as a matter of law.

4. **Settlement Approval, Settlement Timeline, and Mutual Cooperation**. The Parties agree that this Agreement is contingent upon its receiving final approval from the Court and becoming effective, and agree to the following timeline for seeking approval of the Agreement, completion of the settlement, and dismissal of the causes of action amongst the Parties in the Lawsuit:

a. Within twenty-four hours of the full execution of this Agreement, BMI will send two checks totaling $624.00 to Plaintiff's counsel, as outlined in Section 2, *provided* that such monies will only be distributed to Plaintiff upon the Court's approval of a Motion for Approval of Settlement (the "Approval Motion"), as described below.

b. Within fourteen (14) days of the full execution of this Agreement, Counsel for Plaintiff shall file a Motion for Approval of Settlement (the "Approval Motion"). Plaintiff's counsel will provide Contractors' Counsel with a draft of the Approval Motion for review and comment as soon as practicable and, in any event, no fewer than seven (7) days before filing it with the Court. Plaintiff will agree to make any reasonable edits proposed by Contractors before filing. Contractors agree not to oppose the Approval Motion should their proposed edits be incorporated. Along with the Approval Motion, Plaintiff's counsel also will file the Agreement and a Proposed Final Approval Order. Among other things, the Approval Motion will ask the Court to issue and enter a Final Approval Order, which will: (i.) approve the Settlement as a fair and reasonable resolution of *bona fide* disputes under the FLSA, (ii.) incorporate the terms of this Agreement, and (iii.) upon distribution from Plaintiff's Client Trust to Plaintiff of the of payment contemplated by Section 2, dismiss Plaintiff's claims against Contractors with prejudice and enter a final judgment with respect to the same consistent with the terms of this Agreement.

c. This Agreement shall become effective upon the issuance by the Court of a Final Approval Order approving the settlement agreement, distribution from Plaintiff's Client Trust to Plaintiff of the payment contemplated by Section 2, dismissing Plaintiff's claims against Contractors with prejudice, and entering a final judgment with respect to the same consistent with the terms of this Agreement (the "Effective Date"). To the extent the Court fails to grant approval to the Agreement, or in the event that any appeal results in the settlement being found to be invalid, this Agreement will be null and void for all purposes in its entirety, subject to the provisions and procedures set forth in Section 5, *infra*.

d. Within twenty-four hours of the clearance of the checks from Plaintiff's Client Trust, Plaintiff's counsel shall file a notice dismissing claims against Contractors with prejudice.

e. Within seven (7) days of the Effective Date, in exchange for BMI's agreement to pay the amounts set forth in Section 2 including its agreement that Skanska's reasonable attorneys' fees and costs shall be paid from the Withheld Funds and Skanska's agreement to pay BMI the remaining Withheld Funds, and Plaintiff's agreement to dismiss the

claims against Skanska with prejudice, Skanska agrees to dismiss its cross-claims against BMI in the Lawsuit without prejudice. The terms of the Subcontract are continuing in nature and shall remain in full force and effect, and unless expressly stated herein are not modified by this Agreement.

        f.      The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement. The Parties shall use their reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiff's Counsel shall, with the assistance and cooperation of Contractors and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

     5.     **Termination of the Agreement**. Plaintiff or Contractors may terminate the Agreement if the Court declines to enter a Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or the Agreement does not become final for any other reason, provided that the Parties agree to work cooperatively and in good faith for a period of thirty (30) days, to address and resolve any concerns identified by the Court in declining to enter a Final Approval Order or a settlement in the form submitted by the Parties. To terminate this Agreement on the grounds specified above, the terminating Counsel (*i.e.*, Plaintiff's attorneys or counsel for either Contractor) shall give written notice to all other counsel no later than sixty (60) days after the relevant court action. In the event that this Agreement is terminated, or the settlement is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court, the Agreement and the releases contained herein shall be terminated and shall have no force or effect, Plaintiff's counsel shall return the Settlement Amount to BMI, neither Contractor shall have any obligation to make any payments under the Agreement, and no Party shall be bound by any of its terms.

     6.     **Non-Appeal.**  Plaintiff and the Contractors each agree that none of them shall file any appeal of the Court's Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or otherwise challenge such an approval order.

     7.     **Prohibition on Press and Publicity Prior to Court Approval**. The Parties shall keep the terms of this Agreement confidential until Plaintiff files the Approval Motion, as set forth in Section 4.a, *supra*. Prior to Court approval, the Parties and their counsel agree that they will not (i.) issue a press release, disclose to, or otherwise notify the media about the terms of the proposed settlement agreement; and/or (ii.) advertise any of the terms of the proposed settlement agreement through written, recorded, or electronic communication. To the extent that the Parties and/or their respective counsel are contacted by the media about this Agreement and/or the settlement it memorializes prior to Plaintiff filing the Approval Motion, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a tentative settlement subject to court approval, and that the Parties and their counsel believe they have reached a fair and reasonable settlement of the disputed claims.

The foregoing notwithstanding, at any time, including prior to Court Approval, the Parties also shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings or administrative actions in other matters a summary of the terms of this Agreement. Similarly, at any time, including prior to Court approval, Plaintiff also shall have the right to disclose the Agreement to her tax and legal advisors and spouse (if any). For avoidance of doubt, the Parties agree that nothing in this section prevents a Party from disclosing the terms of this Agreement subsequent to Court Approval of the Approval Motion filed by Plaintiff.

The Parties further agree that nothing in this section prevents a Party from moving to enforce this Agreement.

8.      **Arm's Length Transaction**. The terms and conditions of this Agreement are the result of arm's-length negotiations between the Parties. Accordingly, this Agreement is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

9.      **No Assignment**. Plaintiff, BMI, and Skanska represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action, and any attempt to do so shall be of no force or effect.

10.     **Non-Precedential**. This Agreement does not set a precedent for any other dispute between the parties, and may not be referenced or introduced by any party in any other proceeding, except one involving Plaintiff.

11.     **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Virginia, without regard to choice of law principles, except to the extent that the laws of the United States governs any matter set forth herein, in which case such federal law shall govern.

12.     **Entire Agreement**. The Parties understand that this Agreement constitutes the entire agreement among Plaintiff and Contractors with respect to the subject matter thereof.

13.     **Waivers and Modifications**. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment.  Any failure by any Party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14.     **Counterparts**. This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute the same agreement.

[*SIGNATURES ON FOLLOWING PAGE*]

**Alejandra Torres**

Dated: 4 / 13 / 2023

**Brother's Mechanical, Inc.**

Dated: 4/17/23

**Skanska USA Building Inc. d/b/a Skanska**

Dated: 4/17/23

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ALAN N. VARA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:22-cv-01180 |
| | ) MSN-IDD |
| SKANSKA USA BUILDING INC. D/B/A | ) |
| SKANSKA, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT STIPULATION OF SETTLEMENT AND SETTLEMENT AGREEMENT

This Joint Stipulation of Settlement and Settlement Agreement ("Agreement") is made and entered into by and among Brother's Mechanical, Inc. ("BMI"), Skanska USA Building Inc. d/b/a Skanska. ("Skanska") (collectively referred to as "Contractors"), and Alexi Sanchez ("Plaintiff"), collectively the "Parties," for the purposes of resolving and settling the claims amongst the Parties in *Vara, et al. v. Skanska USA Building Inc. d/b/a Skanska, et al.*, Civil Action No. 1:22-cv-01180, filed in the United States District Court for the Eastern District of Virginia ("Lawsuit").

**WHEREAS**, Plaintiff filed a Lawsuit against Contractors, as well as DayCJ Plumbing & Mechanical, Inc. and Edgar Jimenez, to collect allegedly unpaid wages, plus statutory damages, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 ("VWPA"), and the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA") for work performed at the Scotts Run Commercial and Residential Complex in Tysons Corner, Virginia ("the Project").

**WHEREAS**, Skanska filed a cross-claim in the Lawsuit against BMI demanding pursuant to BMI's subcontract with Skanska for the Project ("Subcontract") that BMI defend, indemnify and hold harmless Skanska against any and all damages arising out of Plaintiff's claims, including Skanska's attorneys' fees and costs.

**WHEREAS**, the Parties desire to resolve and settle all claims that Plaintiff has or may have against Contractors arising from this Lawsuit;

**WHEREAS,** BMI has agreed to pay the gross amount of $186,267.50 to all of the Plaintiffs in the Lawsuit, which will be deposited into Plaintiffs' Counsel's client trust account within twenty-four hours of execution of each Plaintiff's settlement agreement, to be distributed to the Plaintiffs only if the Court approves the Approval Motion and, if the Approval Motion is not approved by the Court, the gross sum of $186,267.50 will be returned to BMI;

**NOW, THEREFORE**, in consideration of the covenants, mutual promises, and agreements and payment contained in this Agreement and intending to be legally bound, the Parties agree as follows:

1.  **No Admission**. Contractors have entered into this Agreement to avoid the expense, uncertainty, and delay of further litigation. Contractors expressly deny that they are separately or jointly liable or owe any unpaid wages or other damages to Plaintiff or anyone else with respect to the alleged facts or causes of actions which were asserted, or could have been asserted, in the Lawsuit.  In no event shall this Agreement be used as evidence of liability or wrongdoing by Contractors.

2.  **Payment and Representation by Contractors**. In consideration for the terms and actions outlined in this Agreement, BMI, within twenty-four hours of the full execution of this Agreement, will pay to Plaintiff's Counsel the gross amount of $19,140.00 ("Settlement Amount"), representing:

   a.  $7,195.00 in unpaid wages; and

   b.  $11,945.00 in liquidated damages, which shall be treated as non-wage income.

The gross amount of $19,140.00 will be held by Plaintiff's Counsel in its client trust fund account ("Client's Trust") and will be distributed to Plaintiff within forty-eight hours of the issuance by the Court of a Final Approval Order approving the Agreement and prior to the Plaintiffs filing a notice dismissing claims against Contractors with prejudice.  Furthermore, prior to the issuance of payment from Plaintiff's client trust account to the Plaintiff, BMI may request that Plaintiff provide BMI with an I.R.S. Form W-4, as well as an I.R.S. Form W-9.  However, BMI agrees that it will make payment to Plaintiff irrespective of Plaintiff's completion and production of an I.R.S. Form W-4 and/or an I.R.S. Form W-9.  Furthermore, BMI agrees that Plaintiff may provide, and BMI will accept, an I.R.S Form W-9 solely for purposes of the non-wage income payment of $11,945.00 without regard to Plaintiff completion and production of an I.R.S. Form W-4.  BMI further agrees that it shall notify Plaintiff's Counsel of any mandatory tax withholding resulting from these payments and Plaintiff's Counsel shall return such amounts to BMI out of the gross payment amount held in Plaintiff's Client Trust.

The checks will be made out to O'Donoghue & O'Donoghue LLP to be deposited into a client trust account and mailed to Andrew Costa-Kelser, O'Donoghue & O'Donoghue LLP, 5301 Wisconsin Avenue NW, Suite 800, Washington, DC 20015, by overnight mail. This payment is in consideration for the promises and commitments set forth in this Agreement and is in full and final resolution of Plaintiff's claims against Contractors in the Lawsuit, and all claims Plaintiff has brought or could have brought against Contractors under FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, including for any award of attorneys' fees and costs, for work performed on the Project, up until the date of this Agreement.

Under no circumstances shall Skanska be obligated to make payment to Plaintiff of the aforementioned amounts, should BMI fail to do so.

BMI further agrees to defend, indemnify and hold harmless Skanska for all reasonable attorneys' fees and costs incurred in connection with the Lawsuit and the Counterclaim, which amounts shall be paid from amounts specifically withheld by Skanska against the balance due to BMI under the Subcontract entered into with Skanska that have been expressly identified as withholdings related to the Lawsuit and the Counterclaim ("Withheld Funds"), which are separate and distinct from Subcontract retainage. Skanska agrees to pay to BMI the Withheld Funds, less the reasonable attorneys' fees and costs incurred by Skanska in connection with the Lawsuit and the Counterclaim within 5 days after BMI pays funds due to Plaintiff.

3.      **Release**. In consideration for the promises and commitments set forth in this Agreement, including the payment provided in Section 2 of this Agreement, Plaintiff hereby releases and forever discharges Contractors, their subsidiaries and affiliates, officers, directors, insurers and successors and assigns of each, of and from any and all claims, obligations or causes of action for equitable relief, compensatory, punitive or other damages, employee benefits, expenses (including attorneys' fees and costs), reimbursements or compensation of any kind, arising under FLSA, VWPA, VOWA, and any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, for work performed on the Project, up until the date of this Agreement.

Plaintiff understands that by entering into this Agreement they are waiving the right to file a charge, lawsuit, complaint, or arbitration to assert any claim for additional relief against Contractors for any of these released claims under the FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law.

Plaintiff further agrees that they will withdraw any other pending charges, lawsuits, complaints, or arbitrations against Contractors, including any complaints made by Plaintiff to the Virginia Department of Labor and Industry, raising allegations for relief based upon any claim released in this Agreement. However, nothing herein shall prevent Plaintiff from filing an administrative claim in the future with any government agency under FLSA, VWPA, and VOWA. Provided, however, Plaintiff further agrees that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted, settled, or released in the Lawsuit that may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Contractors related to the Project.

This Agreement also shall not apply to claims for unemployment compensation benefits and any other claim that is not waivable as a matter of law. Plaintiff is not releasing claims that may arise in the future and other claims that cannot be released as a matter of law.

4.      **Settlement Approval, Settlement Timeline, and Mutual Cooperation**. The Parties agree that this Agreement is contingent upon its receiving final approval from the Court and becoming effective, and agree to the following timeline for seeking approval of the Agreement, completion of the settlement, and dismissal of the causes of action amongst the Parties in the Lawsuit:

a.      Within twenty-four hours of the full execution of this Agreement, BMI will send two checks totaling $19,140.00 to Plaintiff's counsel, as outlined in Section 2, *provided* that such monies will only be distributed to Plaintiff upon the Court's approval of a Motion for Approval of Settlement (the "Approval Motion"), as described below.

b.      Within fourteen (14) days of the full execution of this Agreement, Counsel for Plaintiff shall file a Motion for Approval of Settlement (the "Approval Motion").  Plaintiff's counsel will provide Contractors' Counsel with a draft of the Approval Motion for review and comment as soon as practicable and, in any event, no fewer than seven (7) days before filing it with the Court. Plaintiff will agree to make any reasonable edits proposed by Contractors before filing. Contractors agree not to oppose the Approval Motion should their proposed edits be incorporated. Along with the Approval Motion, Plaintiff's counsel also will file the Agreement and a Proposed Final Approval Order. Among other things, the Approval Motion will ask the Court to issue and enter a Final Approval Order, which will: (i.) approve the Settlement as a fair and reasonable resolution of *bona fide* disputes under the FLSA, (ii.) incorporate the terms of this Agreement, and (iii.) upon distribution from Plaintiff's Client Trust to Plaintiff of the of payment contemplated by Section 2, dismiss Plaintiff's claims against Contractors with prejudice and enter a final judgment with respect to the same consistent with the terms of this Agreement.

c.      This Agreement shall become effective upon the issuance by the Court of a Final Approval Order approving the settlement agreement, distribution from Plaintiff's Client Trust to Plaintiff of the payment contemplated by Section 2, dismissing Plaintiff's claims against Contractors with prejudice, and entering a final judgment with respect to the same consistent with the terms of this Agreement (the "Effective Date").  To the extent the Court fails to grant approval to the Agreement, or in the event that any appeal results in the settlement being found to be invalid, this Agreement will be null and void for all purposes in its entirety, subject to the provisions and procedures set forth in Section 5, *infra*.

d.      Within twenty-four hours of the clearance of the checks from Plaintiff's Client Trust, Plaintiff's counsel shall file a notice dismissing claims against Contractors with prejudice.

e.      Within seven (7) days of the Effective Date, in exchange for BMI's agreement to pay the amounts set forth in Section 2 including its agreement that Skanska's reasonable attorneys' fees and costs shall be paid from the Withheld Funds and Skanska's agreement to pay BMI the remaining Withheld Funds, and Plaintiff's agreement to dismiss the claims against Skanska with prejudice, Skanska agrees to dismiss its cross-claims against BMI in the Lawsuit without prejudice.  The terms of the Subcontract are continuing in nature and shall remain in full force and effect, and unless expressly stated herein are not modified by this Agreement.

f.      The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement. The Parties shall use their reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiff's Counsel shall, with the assistance and cooperation of Contractors and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

5.      **Termination of the Agreement**. Plaintiff or Contractors may terminate the Agreement if the Court declines to enter a Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or the Agreement does not become final for any other reason, provided that the Parties agree to work cooperatively and in good faith for a period of thirty (30) days, to address and resolve any concerns identified by the Court in declining to enter a Final Approval Order or a settlement in the form submitted by the Parties.  To terminate this Agreement on the grounds specified above, the terminating Counsel (*i.e.*, Plaintiff's attorneys or counsel for either Contractor) shall give written notice to all other counsel no later than sixty (60) days after the relevant court action.  In the event that this Agreement is terminated, or the settlement is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court, the Agreement and the releases contained herein shall be terminated and shall have no force or effect, Plaintiff's counsel shall return the Settlement Amount to BMI, neither Contractor shall have any obligation to make any payments under the Agreement, and no Party shall be bound by any of its terms.

6.      **Non-Appeal.**  Plaintiff and the Contractors each agree that none of them shall file any appeal of the Court's Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or otherwise challenge such an approval order.

7.      **Prohibition on Press and Publicity Prior to Court Approval**. The Parties shall keep the terms of this Agreement confidential until Plaintiff files the Approval Motion, as set forth in Section 4.a, *supra*. Prior to Court approval, the Parties and their counsel agree that they will not (i.) issue a press release, disclose to, or otherwise notify the media about the terms of the proposed settlement agreement; and/or (ii.) advertise any of the terms of the proposed settlement agreement through written, recorded, or electronic communication. To the extent that the Parties and/or their respective counsel are contacted by the media about this Agreement and/or the settlement it memorializes prior to Plaintiff filing the Approval Motion, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a tentative settlement subject to court approval, and that the Parties and their counsel believe they have reached a fair and reasonable settlement of the disputed claims.

The foregoing notwithstanding, at any time, including prior to Court Approval, the Parties also shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings or administrative actions in other matters a summary of the terms of this Agreement. Similarly, at any time, including prior to Court approval, Plaintiff also shall have the right to

disclose the Agreement to her tax and legal advisors and spouse (if any). For avoidance of doubt, the Parties agree that nothing in this section prevents a Party from disclosing the terms of this Agreement subsequent to Court Approval of the Approval Motion filed by Plaintiff.

The Parties further agree that nothing in this section prevents a Party from moving to enforce this Agreement.

8. **Arm's Length Transaction**. The terms and conditions of this Agreement are the result of arm's-length negotiations between the Parties. Accordingly, this Agreement is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

9. **No Assignment**. Plaintiff, BMI, and Skanska represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action, and any attempt to do so shall be of no force or effect.

10. **Non-Precedential**. This Agreement does not set a precedent for any other dispute between the parties, and may not be referenced or introduced by any party in any other proceeding, except one involving Plaintiff.

11. **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Virginia, without regard to choice of law principles, except to the extent that the laws of the United States governs any matter set forth herein, in which case such federal law shall govern.

12. **Entire Agreement**. The Parties understand that this Agreement constitutes the entire agreement among Plaintiff and Contractors with respect to the subject matter thereof.

13. **Waivers and Modifications**. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment. Any failure by any Party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14. **Counterparts**. This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute the same agreement.

[*SIGNATURES ON FOLLOWING PAGE*]

**Alexi Sanchez**

Alexi sonchez
Dated: 04/13/23

**Brother's Mechanical, Inc.**

Dated: 4/17/23

**Skanska USA Building Inc. d/b/a Skanska**

Dated: 4/17/23

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ALAN N. VARA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:22-cv-01180 |
| | )            MSN-IDD |
| SKANSKA USA BUILDING INC. D/B/A | ) |
| SKANSKA, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT STIPULATION OF SETTLEMENT AND SETTLEMENT AGREEMENT

This Joint Stipulation of Settlement and Settlement Agreement ("Agreement") is made and entered into by and among Brother's Mechanical, Inc. ("BMI"), Skanska USA Building Inc. d/b/a Skanska. ("Skanska") (collectively referred to as "Contractors"), and Ana Yanci Centeno Majano ("Plaintiff"), collectively the "Parties," for the purposes of resolving and settling the claims amongst the Parties in *Vara, et al. v. Skanska USA Building Inc. d/b/a Skanska, et al.*, Civil Action No. 1:22-cv-01180, filed in the United States District Court for the Eastern District of Virginia ("Lawsuit").

**WHEREAS**, Plaintiff filed a Lawsuit against Contractors, as well as DayCJ Plumbing & Mechanical, Inc. and Edgar Jimenez, to collect allegedly unpaid wages, plus statutory damages, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 ("VWPA"), and the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA") for work performed at the Scotts Run Commercial and Residential Complex in Tysons Corner, Virginia ("the Project").

**WHEREAS**, Skanska filed a cross-claim in the Lawsuit against BMI demanding pursuant to BMI's subcontract with Skanska for the Project ("Subcontract") that BMI defend, indemnify and hold harmless Skanska against any and all damages arising out of Plaintiff's claims, including Skanska's attorneys' fees and costs.

**WHEREAS**, the Parties desire to resolve and settle all claims that Plaintiff has or may have against Contractors arising from this Lawsuit;

**WHEREAS,** BMI has agreed to pay the gross amount of $186,267.50 to all of the Plaintiffs in the Lawsuit, which will be deposited into Plaintiffs' Counsel's client trust account within twenty-four hours of execution of each Plaintiff's settlement agreement, to be distributed to the Plaintiffs only if the Court approves the Approval Motion and, if the Approval Motion is not approved by the Court, the gross sum of $186,267.50 will be returned to BMI;

**NOW, THEREFORE**, in consideration of the covenants, mutual promises, and agreements and payment contained in this Agreement and intending to be legally bound, the Parties agree as follows:

1.      **No Admission**. Contractors have entered into this Agreement to avoid the expense, uncertainty, and delay of further litigation. Contractors expressly deny that they are separately or jointly liable or owe any unpaid wages or other damages to Plaintiff or anyone else with respect to the alleged facts or causes of actions which were asserted, or could have been asserted, in the Lawsuit.  In no event shall this Agreement be used as evidence of liability or wrongdoing by Contractors.

2.      **Payment and Representation by Contractors**. In consideration for the terms and actions outlined in this Agreement, BMI, within twenty-four hours of the full execution of this Agreement, will pay to Plaintiff's Counsel the gross amount of $9,184.50 ("Settlement Amount"), representing:

  a.      $3,646.50 in unpaid wages; and

  b.      $5,538.00 in liquidated damages, which shall be treated as non-wage income.

The gross amount of $9,184.50 will be held by Plaintiff's Counsel in its client trust fund account ("Client's Trust") and will be distributed to Plaintiff within forty-eight hours of the issuance by the Court of a Final Approval Order approving the Agreement and prior to the Plaintiffs filing a notice dismissing claims against Contractors with prejudice. Furthermore, prior to the issuance of payment from Plaintiff's client trust account to the Plaintiff, BMI may request that Plaintiff provide BMI with an I.R.S. Form W-4, as well as an I.R.S. Form W-9. However, BMI agrees that it will make payment to Plaintiff irrespective of Plaintiff's completion and production of an I.R.S. Form W-4 and/or an I.R.S. Form W-9. Furthermore, BMI agrees that Plaintiff may provide, and BMI will accept, an I.R.S Form W-9 solely for purposes of the non-wage income payment of $5,538.00 without regard to Plaintiff completion and production of an I.R.S. Form W-4. BMI further agrees that it shall notify Plaintiff's Counsel of any mandatory tax withholding resulting from these payments and Plaintiff's Counsel shall return such amounts to BMI out of the gross payment amount held in Plaintiff's Client Trust.

The checks will be made out to O'Donoghue & O'Donoghue LLP to be deposited into a client trust account and mailed to Andrew Costa-Kelser, O'Donoghue & O'Donoghue LLP, 5301 Wisconsin Avenue NW, Suite 800, Washington, DC 20015, by overnight mail. This payment is in consideration for the promises and commitments set forth in this Agreement and is in full and final resolution of Plaintiff's claims against Contractors in the Lawsuit, and all claims Plaintiff has brought or could have brought against Contractors under FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, including for

any award of attorneys' fees and costs, for work performed on the Project, up until the date of this Agreement.

Under no circumstances shall Skanska be obligated to make payment to Plaintiff of the aforementioned amounts, should BMI fail to do so.

BMI further agrees to defend, indemnify and hold harmless Skanska for all reasonable attorneys' fees and costs incurred in connection with the Lawsuit and the Counterclaim, which amounts shall be paid from amounts specifically withheld by Skanska against the balance due to BMI under the Subcontract entered into with Skanska that have been expressly identified as withholdings related to the Lawsuit and the Counterclaim ("Withheld Funds"), which are separate and distinct from Subcontract retainage.  Skanska agrees to pay to BMI the Withheld Funds, less the reasonable attorneys' fees and costs incurred by Skanska in connection with the Lawsuit and the Counterclaim within 5 days after BMI pays funds due to Plaintiff.

3.     **Release**. In consideration for the promises and commitments set forth in this Agreement, including the payment provided in Section 2 of this Agreement, Plaintiff hereby releases and forever discharges Contractors, their subsidiaries and affiliates, officers, directors, insurers and successors and assigns of each, of and from any and all claims, obligations or causes of action for equitable relief, compensatory, punitive or other damages, employee benefits, expenses (including attorneys' fees and costs), reimbursements or compensation of any kind, arising under FLSA, VWPA, VOWA, and any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, for work performed on the Project, up until the date of this Agreement.

Plaintiff understands that by entering into this Agreement they are waiving the right to file a charge, lawsuit, complaint, or arbitration to assert any claim for additional relief against Contractors for any of these released claims under the FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law.

Plaintiff further agrees that they will withdraw any other pending charges, lawsuits, complaints, or arbitrations against Contractors, including any complaints made by Plaintiff to the Virginia Department of Labor and Industry, raising allegations for relief based upon any claim released in this Agreement. However, nothing herein shall prevent Plaintiff from filing an administrative claim in the future with any government agency under FLSA, VWPA, and VOWA. Provided, however, Plaintiff further agrees that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted, settled, or released in the Lawsuit that may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Contractors related to the Project.

This Agreement also shall not apply to claims for unemployment compensation benefits and any other claim that is not waivable as a matter of law. Plaintiff is not releasing claims that may arise in the future and other claims that cannot be released as a matter of law.

4.      **Settlement Approval, Settlement Timeline, and Mutual Cooperation**. The Parties agree that this Agreement is contingent upon its receiving final approval from the Court and becoming effective, and agree to the following timeline for seeking approval of the Agreement, completion of the settlement, and dismissal of the causes of action amongst the Parties in the Lawsuit:

a.      Within twenty-four hours of the full execution of this Agreement, BMI will send two checks totaling $9,184.50 to Plaintiff's counsel, as outlined in Section 2, *provided* that such monies will only be distributed to Plaintiff upon the Court's approval of a Motion for Approval of Settlement (the "Approval Motion"), as described below.

b.      Within fourteen (14) days of the full execution of this Agreement, Counsel for Plaintiff shall file a Motion for Approval of Settlement (the "Approval Motion").  Plaintiff's counsel will provide Contractors' Counsel with a draft of the Approval Motion for review and comment as soon as practicable and, in any event, no fewer than seven (7) days before filing it with the Court. Plaintiff will agree to make any reasonable edits proposed by Contractors before filing. Contractors agree not to oppose the Approval Motion should their proposed edits be incorporated. Along with the Approval Motion, Plaintiff's counsel also will file the Agreement and a Proposed Final Approval Order. Among other things, the Approval Motion will ask the Court to issue and enter a Final Approval Order, which will: (i.) approve the Settlement as a fair and reasonable resolution of *bona fide* disputes under the FLSA, (ii.) incorporate the terms of this Agreement, and (iii.) upon distribution from Plaintiff's Client Trust to Plaintiff of the of payment contemplated by Section 2, dismiss Plaintiff's claims against Contractors with prejudice and enter a final judgment with respect to the same consistent with the terms of this Agreement.

c.      This Agreement shall become effective upon the issuance by the Court of a Final Approval Order approving the settlement agreement, distribution from Plaintiff's Client Trust to Plaintiff of the payment contemplated by Section 2, dismissing Plaintiff's claims against Contractors with prejudice, and entering a final judgment with respect to the same consistent with the terms of this Agreement (the "Effective Date").  To the extent the Court fails to grant approval to the Agreement, or in the event that any appeal results in the settlement being found to be invalid, this Agreement will be null and void for all purposes in its entirety, subject to the provisions and procedures set forth in Section 5, *infra*.

d.      Within twenty-four hours of the clearance of the checks from Plaintiff's Client Trust, Plaintiff's counsel shall file a notice dismissing claims against Contractors with prejudice.

e.      Within seven (7) days of the Effective Date, in exchange for BMI's agreement to pay the amounts set forth in Section 2 including its agreement that Skanska's reasonable attorneys' fees and costs shall be paid from the Withheld Funds and Skanska's agreement to pay BMI the remaining Withheld Funds, and Plaintiff's agreement to dismiss the

claims against Skanska with prejudice, Skanska agrees to dismiss its cross-claims against BMI in the Lawsuit without prejudice. The terms of the Subcontract are continuing in nature and shall remain in full force and effect, and unless expressly stated herein are not modified by this Agreement.

   f. The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement. The Parties shall use their reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiff's Counsel shall, with the assistance and cooperation of Contractors and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

   5. **Termination of the Agreement**. Plaintiff or Contractors may terminate the Agreement if the Court declines to enter a Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or the Agreement does not become final for any other reason, provided that the Parties agree to work cooperatively and in good faith for a period of thirty (30) days, to address and resolve any concerns identified by the Court in declining to enter a Final Approval Order or a settlement in the form submitted by the Parties. To terminate this Agreement on the grounds specified above, the terminating Counsel (*i.e.*, Plaintiff's attorneys or counsel for either Contractor) shall give written notice to all other counsel no later than sixty (60) days after the relevant court action. In the event that this Agreement is terminated, or the settlement is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court, the Agreement and the releases contained herein shall be terminated and shall have no force or effect, Plaintiff's counsel shall return the Settlement Amount to BMI, neither Contractor shall have any obligation to make any payments under the Agreement, and no Party shall be bound by any of its terms.

   6. **Non-Appeal.** Plaintiff and the Contractors each agree that none of them shall file any appeal of the Court's Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or otherwise challenge such an approval order.

   7. **Prohibition on Press and Publicity Prior to Court Approval**. The Parties shall keep the terms of this Agreement confidential until Plaintiff files the Approval Motion, as set forth in Section 4.a, *supra*. Prior to Court approval, the Parties and their counsel agree that they will not (i.) issue a press release, disclose to, or otherwise notify the media about the terms of the proposed settlement agreement; and/or (ii.) advertise any of the terms of the proposed settlement agreement through written, recorded, or electronic communication. To the extent that the Parties and/or their respective counsel are contacted by the media about this Agreement and/or the settlement it memorializes prior to Plaintiff filing the Approval Motion, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a tentative settlement subject to court approval, and that the Parties and their counsel believe they have reached a fair and reasonable settlement of the disputed claims.

The foregoing notwithstanding, at any time, including prior to Court Approval, the Parties also shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings or administrative actions in other matters a summary of the terms of this Agreement. Similarly, at any time, including prior to Court approval, Plaintiff also shall have the right to disclose the Agreement to her tax and legal advisors and spouse (if any). For avoidance of doubt, the Parties agree that nothing in this section prevents a Party from disclosing the terms of this Agreement subsequent to Court Approval of the Approval Motion filed by Plaintiff.

The Parties further agree that nothing in this section prevents a Party from moving to enforce this Agreement.

8.   **Arm's Length Transaction**. The terms and conditions of this Agreement are the result of arm's-length negotiations between the Parties. Accordingly, this Agreement is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

9.   **No Assignment**. Plaintiff, BMI, and Skanska represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action, and any attempt to do so shall be of no force or effect.

10.   **Non-Precedential**. This Agreement does not set a precedent for any other dispute between the parties, and may not be referenced or introduced by any party in any other proceeding, except one involving Plaintiff.

11.   **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Virginia, without regard to choice of law principles, except to the extent that the laws of the United States governs any matter set forth herein, in which case such federal law shall govern.

12.   **Entire Agreement**. The Parties understand that this Agreement constitutes the entire agreement among Plaintiff and Contractors with respect to the subject matter thereof.

13.   **Waivers and Modifications**. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment. Any failure by any Party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14.   **Counterparts**. This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute the same agreement.

[*SIGNATURES ON FOLLOWING PAGE*]

**Ana Yanci Centeno Majano**

Dated: 04/13/2023

**Brother's Mechanical, Inc.**

Dated: 4/17/23

**Skanska USA Building Inc. d/b/a Skanska**

Dated: 4/17/23

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ALAN N. VARA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:22-cv-01180 |
| | )                   MSN-IDD |
| SKANSKA USA BUILDING INC. D/B/A | ) |
| SKANSKA, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT STIPULATION OF SETTLEMENT AND SETTLEMENT AGREEMENT

This Joint Stipulation of Settlement and Settlement Agreement ("Agreement") is made and entered into by and among Brother's Mechanical, Inc. ("BMI"), Skanska USA Building Inc. d/b/a Skanska. ("Skanska") (collectively referred to as "Contractors"), and Arys Solano ("Plaintiff"), collectively the "Parties," for the purposes of resolving and settling the claims amongst the Parties in *Vara, et al. v. Skanska USA Building Inc. d/b/a Skanska, et al.*, Civil Action No. 1:22-cv-01180, filed in the United States District Court for the Eastern District of Virginia ("Lawsuit").

**WHEREAS**, Plaintiff filed a Lawsuit against Contractors, as well as DayCJ Plumbing & Mechanical, Inc. and Edgar Jimenez, to collect allegedly unpaid wages, plus statutory damages, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 ("VWPA"), and the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA") for work performed at the Scotts Run Commercial and Residential Complex in Tysons Corner, Virginia ("the Project").

**WHEREAS**, Skanska filed a cross-claim in the Lawsuit against BMI demanding pursuant to BMI's subcontract with Skanska for the Project ("Subcontract") that BMI defend, indemnify and hold harmless Skanska against any and all damages arising out of Plaintiff's claims, including Skanska's attorneys' fees and costs.

**WHEREAS**, the Parties desire to resolve and settle all claims that Plaintiff has or may have against Contractors arising from this Lawsuit;

**WHEREAS,** BMI has agreed to pay the gross amount of $186,267.50 to all of the Plaintiffs in the Lawsuit, which will be deposited into Plaintiffs' Counsel's client trust account within twenty-four hours of execution of each Plaintiff's settlement agreement, to be distributed to the Plaintiffs only if the Court approves the Approval Motion and, if the Approval Motion is not approved by the Court, the gross sum of $186,267.50 will be returned to BMI;

**NOW, THEREFORE**, in consideration of the covenants, mutual promises, and agreements and payment contained in this Agreement and intending to be legally bound, the Parties agree as follows:

1.   **No Admission**. Contractors have entered into this Agreement to avoid the expense, uncertainty, and delay of further litigation. Contractors expressly deny that they are separately or jointly liable or owe any unpaid wages or other damages to Plaintiff or anyone else with respect to the alleged facts or causes of actions which were asserted, or could have been asserted, in the Lawsuit.  In no event shall this Agreement be used as evidence of liability or wrongdoing by Contractors.

2.   **Payment and Representation by Contractors**. In consideration for the terms and actions outlined in this Agreement, BMI, within twenty-four hours of the full execution of this Agreement, will pay to Plaintiff's Counsel the gross amount of $1,056.00 ("Settlement Amount"), representing:

      a.     $352.00 in unpaid wages; and

      b.     $704.00 in liquidated damages, which shall be treated as non-wage income.

The gross amount of $1,056.00 will be held by Plaintiff's Counsel in its client trust fund account ("Client's Trust") and will be distributed to Plaintiff within forty-eight hours of the issuance by the Court of a Final Approval Order approving the Agreement and prior to the Plaintiffs filing a notice dismissing claims against Contractors with prejudice.  Furthermore, prior to the issuance of payment from Plaintiff's client trust account to the Plaintiff, BMI may request that Plaintiff provide BMI with an I.R.S. Form W-4, as well as an I.R.S. Form W-9.  However, BMI agrees that it will make payment to Plaintiff irrespective of Plaintiff's completion and production of an I.R.S. Form W-4 and/or an I.R.S. Form W-9.  Furthermore, BMI agrees that Plaintiff may provide, and BMI will accept, an I.R.S Form W-9 solely for purposes of the non-wage income payment of $704.00 without regard to Plaintiff completion and production of an I.R.S. Form W-4.  BMI further agrees that it shall notify Plaintiff's Counsel of any mandatory tax withholding resulting from these payments and Plaintiff's Counsel shall return such amounts to BMI out of the gross payment amount held in Plaintiff's Client Trust.

The checks will be made out to O'Donoghue & O'Donoghue LLP to be deposited into a client trust account and mailed to Andrew Costa-Kelser, O'Donoghue & O'Donoghue LLP, 5301 Wisconsin Avenue NW, Suite 800, Washington, DC 20015, by overnight mail. This payment is in consideration for the promises and commitments set forth in this Agreement and is in full and final resolution of Plaintiff's claims against Contractors in the Lawsuit, and all claims Plaintiff has brought or could have brought against Contractors under FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, including for any award of attorneys' fees and costs, for work performed on the Project, up until the date of this Agreement.

Under no circumstances shall Skanska be obligated to make payment to Plaintiff of the aforementioned amounts, should BMI fail to do so.

BMI further agrees to defend, indemnify and hold harmless Skanska for all reasonable attorneys' fees and costs incurred in connection with the Lawsuit and the Counterclaim, which amounts shall be paid from amounts specifically withheld by Skanska against the balance due to BMI under the Subcontract entered into with Skanska that have been expressly identified as withholdings related to the Lawsuit and the Counterclaim ("Withheld Funds"), which are separate and distinct from Subcontract retainage. Skanska agrees to pay to BMI the Withheld Funds, less the reasonable attorneys' fees and costs incurred by Skanska in connection with the Lawsuit and the Counterclaim within 5 days after BMI pays funds due to Plaintiff.

3.      **Release**. In consideration for the promises and commitments set forth in this Agreement, including the payment provided in Section 2 of this Agreement, Plaintiff hereby releases and forever discharges Contractors, their subsidiaries and affiliates, officers, directors, insurers and successors and assigns of each, of and from any and all claims, obligations or causes of action for equitable relief, compensatory, punitive or other damages, employee benefits, expenses (including attorneys' fees and costs), reimbursements or compensation of any kind, arising under FLSA, VWPA, VOWA, and any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, for work performed on the Project, up until the date of this Agreement.

Plaintiff understands that by entering into this Agreement they are waiving the right to file a charge, lawsuit, complaint, or arbitration to assert any claim for additional relief against Contractors for any of these released claims under the FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law.

Plaintiff further agrees that they will withdraw any other pending charges, lawsuits, complaints, or arbitrations against Contractors, including any complaints made by Plaintiff to the Virginia Department of Labor and Industry, raising allegations for relief based upon any claim released in this Agreement. However, nothing herein shall prevent Plaintiff from filing an administrative claim in the future with any government agency under FLSA, VWPA, and VOWA. Provided, however, Plaintiff further agrees that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted, settled, or released in the Lawsuit that may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Contractors related to the Project.

This Agreement also shall not apply to claims for unemployment compensation benefits and any other claim that is not waivable as a matter of law. Plaintiff is not releasing claims that may arise in the future and other claims that cannot be released as a matter of law.

4.       **Settlement Approval, Settlement Timeline, and Mutual Cooperation**. The Parties agree that this Agreement is contingent upon its receiving final approval from the Court and becoming effective, and agree to the following timeline for seeking approval of the Agreement, completion of the settlement, and dismissal of the causes of action amongst the Parties in the Lawsuit:

a.       Within twenty-four hours of the full execution of this Agreement, BMI will send two checks totaling $1,056.00 to Plaintiff's counsel, as outlined in Section 2, *provided* that such monies will only be distributed to Plaintiff upon the Court's approval of a Motion for Approval of Settlement (the "Approval Motion"), as described below.

b.       Within fourteen (14) days of the full execution of this Agreement, Counsel for Plaintiff shall file a Motion for Approval of Settlement (the "Approval Motion").  Plaintiff's counsel will provide Contractors' Counsel with a draft of the Approval Motion for review and comment as soon as practicable and, in any event, no fewer than seven (7) days before filing it with the Court. Plaintiff will agree to make any reasonable edits proposed by Contractors before filing. Contractors agree not to oppose the Approval Motion should their proposed edits be incorporated. Along with the Approval Motion, Plaintiff's counsel also will file the Agreement and a Proposed Final Approval Order. Among other things, the Approval Motion will ask the Court to issue and enter a Final Approval Order, which will: (i.) approve the Settlement as a fair and reasonable resolution of *bona fide* disputes under the FLSA, (ii.) incorporate the terms of this Agreement, and (iii.) upon distribution from Plaintiff's Client Trust to Plaintiff of the of payment contemplated by Section 2, dismiss Plaintiff's claims against Contractors with prejudice and enter a final judgment with respect to the same consistent with the terms of this Agreement.

c.       This Agreement shall become effective upon the issuance by the Court of a Final Approval Order approving the settlement agreement, distribution from Plaintiff's Client Trust to Plaintiff of the payment contemplated by Section 2, dismissing Plaintiff's claims against Contractors with prejudice, and entering a final judgment with respect to the same consistent with the terms of this Agreement (the "Effective Date").  To the extent the Court fails to grant approval to the Agreement, or in the event that any appeal results in the settlement being found to be invalid, this Agreement will be null and void for all purposes in its entirety, subject to the provisions and procedures set forth in Section 5, *infra*.

d.       Within twenty-four hours of the clearance of the checks from Plaintiff's Client Trust, Plaintiff's counsel shall file a notice dismissing claims against Contractors with prejudice.

e.       Within seven (7) days of the Effective Date, in exchange for BMI's agreement to pay the amounts set forth in Section 2 including its agreement that Skanska's reasonable attorneys' fees and costs shall be paid from the Withheld Funds and Skanska's agreement to pay BMI the remaining Withheld Funds, and Plaintiff's agreement to dismiss the claims against Skanska with prejudice, Skanska agrees to dismiss its cross-claims against BMI in the Lawsuit without prejudice.  The terms of the Subcontract are continuing in nature and shall remain in full force and effect, and unless expressly stated herein are not modified by this Agreement.

f.      The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement. The Parties shall use their reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiff's Counsel shall, with the assistance and cooperation of Contractors and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

5.      **Termination of the Agreement**. Plaintiff or Contractors may terminate the Agreement if the Court declines to enter a Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or the Agreement does not become final for any other reason, provided that the Parties agree to work cooperatively and in good faith for a period of thirty (30) days, to address and resolve any concerns identified by the Court in declining to enter a Final Approval Order or a settlement in the form submitted by the Parties.  To terminate this Agreement on the grounds specified above, the terminating Counsel (*i.e.*, Plaintiff's attorneys or counsel for either Contractor) shall give written notice to all other counsel no later than sixty (60) days after the relevant court action.  In the event that this Agreement is terminated, or the settlement is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court, the Agreement and the releases contained herein shall be terminated and shall have no force or effect, Plaintiff's counsel shall return the Settlement Amount to BMI, neither Contractor shall have any obligation to make any payments under the Agreement, and no Party shall be bound by any of its terms.

6.      **Non-Appeal.**  Plaintiff and the Contractors each agree that none of them shall file any appeal of the Court's Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or otherwise challenge such an approval order.

7.      **Prohibition on Press and Publicity Prior to Court Approval**. The Parties shall keep the terms of this Agreement confidential until Plaintiff files the Approval Motion, as set forth in Section 4.a, *supra*. Prior to Court approval, the Parties and their counsel agree that they will not (i.) issue a press release, disclose to, or otherwise notify the media about the terms of the proposed settlement agreement; and/or (ii.) advertise any of the terms of the proposed settlement agreement through written, recorded, or electronic communication. To the extent that the Parties and/or their respective counsel are contacted by the media about this Agreement and/or the settlement it memorializes prior to Plaintiff filing the Approval Motion, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a tentative settlement subject to court approval, and that the Parties and their counsel believe they have reached a fair and reasonable settlement of the disputed claims.

The foregoing notwithstanding, at any time, including prior to Court Approval, the Parties also shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings or administrative actions in other matters a summary of the terms of this Agreement. Similarly, at any time, including prior to Court approval, Plaintiff also shall have the right to

disclose the Agreement to her tax and legal advisors and spouse (if any). For avoidance of doubt, the Parties agree that nothing in this section prevents a Party from disclosing the terms of this Agreement subsequent to Court Approval of the Approval Motion filed by Plaintiff.

The Parties further agree that nothing in this section prevents a Party from moving to enforce this Agreement.

8.       **Arm's Length Transaction**. The terms and conditions of this Agreement are the result of arm's-length negotiations between the Parties. Accordingly, this Agreement is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

9.       **No Assignment**. Plaintiff, BMI, and Skanska represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action, and any attempt to do so shall be of no force or effect.

10.       **Non-Precedential**. This Agreement does not set a precedent for any other dispute between the parties, and may not be referenced or introduced by any party in any other proceeding, except one involving Plaintiff.

11.       **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Virginia, without regard to choice of law principles, except to the extent that the laws of the United States governs any matter set forth herein, in which case such federal law shall govern.

12.       **Entire Agreement**. The Parties understand that this Agreement constitutes the entire agreement among Plaintiff and Contractors with respect to the subject matter thereof.

13.       **Waivers and Modifications**. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment.  Any failure by any Party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14.       **Counterparts**. This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute the same agreement.

[*SIGNATURES ON FOLLOWING PAGE*]

**Arys Solano**

Dated: 04 / 13 /2023

**Brother's Mechanical, Inc.**

Dated: 4/17/23

**Skanska USA Building Inc. d/b/a Skanska**

Dated: 4/17/23

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| ALAN N. VARA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:22-cv-01180 |
| | )              MSN-IDD |
| SKANSKA USA BUILDING INC. D/B/A | ) |
| SKANSKA, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT STIPULATION OF SETTLEMENT AND SETTLEMENT AGREEMENT

This Joint Stipulation of Settlement and Settlement Agreement ("Agreement") is made and entered into by and among Brother's Mechanical, Inc. ("BMI"), Skanska USA Building Inc. d/b/a Skanska. ("Skanska") (collectively referred to as "Contractors"), and Elier Mendoza ("Plaintiff"), collectively the "Parties," for the purposes of resolving and settling the claims amongst the Parties in *Vara, et al. v. Skanska USA Building Inc. d/b/a Skanska, et al.*, Civil Action No. 1:22-cv-01180, filed in the United States District Court for the Eastern District of Virginia ("Lawsuit").

**WHEREAS**, Plaintiff filed a Lawsuit against Contractors, as well as DayCJ Plumbing & Mechanical, Inc. and Edgar Jimenez, to collect allegedly unpaid wages, plus statutory damages, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 ("VWPA"), and the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA") for work performed at the Scotts Run Commercial and Residential Complex in Tysons Corner, Virginia ("the Project").

**WHEREAS**, Skanska filed a cross-claim in the Lawsuit against BMI demanding pursuant to BMI's subcontract with Skanska for the Project ("Subcontract") that BMI defend, indemnify and hold harmless Skanska against any and all damages arising out of Plaintiff's claims, including Skanska's attorneys' fees and costs.

**WHEREAS**, the Parties desire to resolve and settle all claims that Plaintiff has or may have against Contractors arising from this Lawsuit;

**WHEREAS,** BMI has agreed to pay the gross amount of $186,267.50 to all of the Plaintiffs in the Lawsuit, which will be deposited into Plaintiffs' Counsel's client trust account within twenty-four hours of execution of each Plaintiff's settlement agreement, to be distributed to the Plaintiffs only if the Court approves the Approval Motion and, if the Approval Motion is not approved by the Court, the gross sum of $186,267.50 will be returned to BMI;

**NOW, THEREFORE**, in consideration of the covenants, mutual promises, and agreements and payment contained in this Agreement and intending to be legally bound, the Parties agree as follows:

1.    **No Admission**. Contractors have entered into this Agreement to avoid the expense, uncertainty, and delay of further litigation. Contractors expressly deny that they are separately or jointly liable or owe any unpaid wages or other damages to Plaintiff or anyone else with respect to the alleged facts or causes of actions which were asserted, or could have been asserted, in the Lawsuit.  In no event shall this Agreement be used as evidence of liability or wrongdoing by Contractors.

2.    **Payment and Representation by Contractors**. In consideration for the terms and actions outlined in this Agreement, BMI, within twenty-four hours of the full execution of this Agreement, will pay to Plaintiff's Counsel the gross amount of $31,612.50 ("Settlement Amount"), representing:

    a.    $12,806.25 in unpaid wages; and

    b.    $18,806.25 in liquidated damages, which shall be treated as non-wage income.

The gross amount of $31,612.50 will be held by Plaintiff's Counsel in its client trust fund account ("Client's Trust") and will be distributed to Plaintiff within forty-eight hours of the issuance by the Court of a Final Approval Order approving the Agreement and prior to the Plaintiffs filing a notice dismissing claims against Contractors with prejudice.  Furthermore, prior to the issuance of payment from Plaintiff's client trust account to the Plaintiff, BMI may request that Plaintiff provide BMI with an I.R.S. Form W-4, as well as an I.R.S. Form W-9.  However, BMI agrees that it will make payment to Plaintiff irrespective of Plaintiff's completion and production of an I.R.S. Form W-4 and/or an I.R.S. Form W-9.  Furthermore, BMI agrees that Plaintiff may provide, and BMI will accept, an I.R.S Form W-9 solely for purposes of the non-wage income payment of $18,806.25 without regard to Plaintiff completion and production of an I.R.S. Form W-4.  BMI further agrees that it shall notify Plaintiff's Counsel of any mandatory tax withholding resulting from these payments and Plaintiff's Counsel shall return such amounts to BMI out of the gross payment amount held in Plaintiff's Client Trust.

The checks will be made out to O'Donoghue & O'Donoghue LLP to be deposited into a client trust account and mailed to Andrew Costa-Kelser, O'Donoghue & O'Donoghue LLP, 5301 Wisconsin Avenue NW, Suite 800, Washington, DC 20015, by overnight mail. This payment is in consideration for the promises and commitments set forth in this Agreement and is in full and final resolution of Plaintiff's claims against Contractors in the Lawsuit, and all claims Plaintiff has brought or could have brought against Contractors under FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, including for any award of attorneys' fees and costs, for work performed on the Project, up until the date of this Agreement.

Under no circumstances shall Skanska be obligated to make payment to Plaintiff of the aforementioned amounts, should BMI fail to do so.

BMI further agrees to defend, indemnify and hold harmless Skanska for all reasonable attorneys' fees and costs incurred in connection with the Lawsuit and the Counterclaim, which amounts shall be paid from amounts specifically withheld by Skanska against the balance due to BMI under the Subcontract entered into with Skanska that have been expressly identified as withholdings related to the Lawsuit and the Counterclaim ("Withheld Funds"), which are separate and distinct from Subcontract retainage. Skanska agrees to pay to BMI the Withheld Funds, less the reasonable attorneys' fees and costs incurred by Skanska in connection with the Lawsuit and the Counterclaim within 5 days after BMI pays funds due to Plaintiff.

3.      **Release**. In consideration for the promises and commitments set forth in this Agreement, including the payment provided in Section 2 of this Agreement, Plaintiff hereby releases and forever discharges Contractors, their subsidiaries and affiliates, officers, directors, insurers and successors and assigns of each, of and from any and all claims, obligations or causes of action for equitable relief, compensatory, punitive or other damages, employee benefits, expenses (including attorneys' fees and costs), reimbursements or compensation of any kind, arising under FLSA, VWPA, VOWA, and any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, for work performed on the Project, up until the date of this Agreement.

Plaintiff understands that by entering into this Agreement they are waiving the right to file a charge, lawsuit, complaint, or arbitration to assert any claim for additional relief against Contractors for any of these released claims under the FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law.

Plaintiff further agrees that they will withdraw any other pending charges, lawsuits, complaints, or arbitrations against Contractors, including any complaints made by Plaintiff to the Virginia Department of Labor and Industry, raising allegations for relief based upon any claim released in this Agreement. However, nothing herein shall prevent Plaintiff from filing an administrative claim in the future with any government agency under FLSA, VWPA, and VOWA. Provided, however, Plaintiff further agrees that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted, settled, or released in the Lawsuit that may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Contractors related to the Project.

This Agreement also shall not apply to claims for unemployment compensation benefits and any other claim that is not waivable as a matter of law. Plaintiff is not releasing claims that may arise in the future and other claims that cannot be released as a matter of law.

4.      **Settlement Approval, Settlement Timeline, and Mutual Cooperation**. The Parties agree that this Agreement is contingent upon its receiving final approval from the Court and becoming effective, and agree to the following timeline for seeking approval of the Agreement, completion of the settlement, and dismissal of the causes of action amongst the Parties in the Lawsuit:

a.      Within twenty-four hours of the full execution of this Agreement, BMI will send two checks totaling $31,612.50 to Plaintiff's counsel, as outlined in Section 2, *provided* that such monies will only be distributed to Plaintiff upon the Court's approval of a Motion for Approval of Settlement (the "Approval Motion"), as described below.

b.      Within fourteen (14) days of the full execution of this Agreement, Counsel for Plaintiff shall file a Motion for Approval of Settlement (the "Approval Motion"). Plaintiff's counsel will provide Contractors' Counsel with a draft of the Approval Motion for review and comment as soon as practicable and, in any event, no fewer than seven (7) days before filing it with the Court. Plaintiff will agree to make any reasonable edits proposed by Contractors before filing. Contractors agree not to oppose the Approval Motion should their proposed edits be incorporated. Along with the Approval Motion, Plaintiff's counsel also will file the Agreement and a Proposed Final Approval Order. Among other things, the Approval Motion will ask the Court to issue and enter a Final Approval Order, which will: (i.) approve the Settlement as a fair and reasonable resolution of *bona fide* disputes under the FLSA, (ii.) incorporate the terms of this Agreement, and (iii.) upon distribution from Plaintiff's Client Trust to Plaintiff of the of payment contemplated by Section 2, dismiss Plaintiff's claims against Contractors with prejudice and enter a final judgment with respect to the same consistent with the terms of this Agreement.

c.      This Agreement shall become effective upon the issuance by the Court of a Final Approval Order approving the settlement agreement, distribution from Plaintiff's Client Trust to Plaintiff of the payment contemplated by Section 2, dismissing Plaintiff's claims against Contractors with prejudice, and entering a final judgment with respect to the same consistent with the terms of this Agreement (the "Effective Date"). To the extent the Court fails to grant approval to the Agreement, or in the event that any appeal results in the settlement being found to be invalid, this Agreement will be null and void for all purposes in its entirety, subject to the provisions and procedures set forth in Section 5, *infra*.

d.      Within twenty-four hours of the clearance of the checks from Plaintiff's Client Trust, Plaintiff's counsel shall file a notice dismissing claims against Contractors with prejudice.

e.      Within seven (7) days of the Effective Date, in exchange for BMI's agreement to pay the amounts set forth in Section 2 including its agreement that Skanska's reasonable attorneys' fees and costs shall be paid from the Withheld Funds and Skanska's agreement to pay BMI the remaining Withheld Funds, and Plaintiff's agreement to dismiss the claims against Skanska with prejudice, Skanska agrees to dismiss its cross-claims against BMI in the Lawsuit without prejudice. The terms of the Subcontract are continuing in nature and shall remain in full force and effect, and unless expressly stated herein are not modified by this Agreement.

f.      The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement. The Parties shall use their reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiff's Counsel shall, with the assistance and cooperation of Contractors and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

5.      **Termination of the Agreement**. Plaintiff or Contractors may terminate the Agreement if the Court declines to enter a Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or the Agreement does not become final for any other reason, provided that the Parties agree to work cooperatively and in good faith for a period of thirty (30) days, to address and resolve any concerns identified by the Court in declining to enter a Final Approval Order or a settlement in the form submitted by the Parties.  To terminate this Agreement on the grounds specified above, the terminating Counsel (*i.e.*, Plaintiff's attorneys or counsel for either Contractor) shall give written notice to all other counsel no later than sixty (60) days after the relevant court action.  In the event that this Agreement is terminated, or the settlement is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court, the Agreement and the releases contained herein shall be terminated and shall have no force or effect, Plaintiff's counsel shall return the Settlement Amount to BMI, neither Contractor shall have any obligation to make any payments under the Agreement, and no Party shall be bound by any of its terms.

6.      **Non-Appeal.**  Plaintiff and the Contractors each agree that none of them shall file any appeal of the Court's Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or otherwise challenge such an approval order.

7.      **Prohibition on Press and Publicity Prior to Court Approval**. The Parties shall keep the terms of this Agreement confidential until Plaintiff files the Approval Motion, as set forth in Section 4.a, *supra*. Prior to Court approval, the Parties and their counsel agree that they will not (i.) issue a press release, disclose to, or otherwise notify the media about the terms of the proposed settlement agreement; and/or (ii.) advertise any of the terms of the proposed settlement agreement through written, recorded, or electronic communication. To the extent that the Parties and/or their respective counsel are contacted by the media about this Agreement and/or the settlement it memorializes prior to Plaintiff filing the Approval Motion, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a tentative settlement subject to court approval, and that the Parties and their counsel believe they have reached a fair and reasonable settlement of the disputed claims.

The foregoing notwithstanding, at any time, including prior to Court Approval, the Parties also shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings or administrative actions in other matters a summary of the terms of this Agreement. Similarly, at any time, including prior to Court approval, Plaintiff also shall have the right to

disclose the Agreement to her tax and legal advisors and spouse (if any). For avoidance of doubt, the Parties agree that nothing in this section prevents a Party from disclosing the terms of this Agreement subsequent to Court Approval of the Approval Motion filed by Plaintiff.

The Parties further agree that nothing in this section prevents a Party from moving to enforce this Agreement.

8.     **Arm's Length Transaction**. The terms and conditions of this Agreement are the result of arm's-length negotiations between the Parties. Accordingly, this Agreement is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

9.     **No Assignment**. Plaintiff, BMI, and Skanska represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action, and any attempt to do so shall be of no force or effect.

10.     **Non-Precedential**. This Agreement does not set a precedent for any other dispute between the parties, and may not be referenced or introduced by any party in any other proceeding, except one involving Plaintiff.

11.     **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Virginia, without regard to choice of law principles, except to the extent that the laws of the United States governs any matter set forth herein, in which case such federal law shall govern.

12.     **Entire Agreement**. The Parties understand that this Agreement constitutes the entire agreement among Plaintiff and Contractors with respect to the subject matter thereof.

13.     **Waivers and Modifications**. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment.  Any failure by any Party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14.     **Counterparts**. This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute the same agreement.

[*SIGNATURES ON FOLLOWING PAGE*]

**Elier Mendoza**

Dated: 04/13/2023

**Brother's Mechanical, Inc.**

Dated: 4/17/23

**Skanska USA Building Inc. d/b/a Skanska**

Dated: 4/17/23

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| ALAN N. VARA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:22-cv-01180 |
| | )              MSN-IDD |
| SKANSKA USA BUILDING INC. D/B/A | ) |
| SKANSKA, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT STIPULATION OF SETTLEMENT AND SETTLEMENT AGREEMENT

This Joint Stipulation of Settlement and Settlement Agreement ("Agreement") is made and entered into by and among Brother's Mechanical, Inc. ("BMI"), Skanska USA Building Inc. d/b/a Skanska. ("Skanska") (collectively referred to as "Contractors"), and Jose Alejandro Mendoza ("Plaintiff"), collectively the "Parties," for the purposes of resolving and settling the claims amongst the Parties in *Vara, et al. v. Skanska USA Building Inc. d/b/a Skanska, et al.*, Civil Action No. 1:22-cv-01180, filed in the United States District Court for the Eastern District of Virginia ("Lawsuit").

**WHEREAS**, Plaintiff filed a Lawsuit against Contractors, as well as DayCJ Plumbing & Mechanical, Inc. and Edgar Jimenez, to collect allegedly unpaid wages, plus statutory damages, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 ("VWPA"), and the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA") for work performed at the Scotts Run Commercial and Residential Complex in Tysons Corner, Virginia ("the Project").

**WHEREAS**, Skanska filed a cross-claim in the Lawsuit against BMI demanding pursuant to BMI's subcontract with Skanska for the Project ("Subcontract") that BMI defend, indemnify and hold harmless Skanska against any and all damages arising out of Plaintiff's claims, including Skanska's attorneys' fees and costs.

**WHEREAS**, the Parties desire to resolve and settle all claims that Plaintiff has or may have against Contractors arising from this Lawsuit;

**WHEREAS,** BMI has agreed to pay the gross amount of $186,267.50 to all of the Plaintiffs in the Lawsuit, which will be deposited into Plaintiffs' Counsel's client trust account within twenty-four hours of execution of each Plaintiff's settlement agreement, to be distributed to the Plaintiffs only if the Court approves the Approval Motion and, if the Approval Motion is not approved by the Court, the gross sum of $186,267.50 will be returned to BMI;

     **NOW, THEREFORE**, in consideration of the covenants, mutual promises, and agreements and payment contained in this Agreement and intending to be legally bound, the Parties agree as follows:

     1.     **No Admission**. Contractors have entered into this Agreement to avoid the expense, uncertainty, and delay of further litigation. Contractors expressly deny that they are separately or jointly liable or owe any unpaid wages or other damages to Plaintiff or anyone else with respect to the alleged facts or causes of actions which were asserted, or could have been asserted, in the Lawsuit. In no event shall this Agreement be used as evidence of liability or wrongdoing by Contractors.

     2.     **Payment and Representation by Contractors**. In consideration for the terms and actions outlined in this Agreement, BMI, within twenty-four hours of the full execution of this Agreement, will pay to Plaintiff's Counsel the gross amount of $25,290.00 ("Settlement Amount"), representing:

     a.     $10,245.00 in unpaid wages; and

     b.     $15,045.00 in liquidated damages, which shall be treated as non-wage income.

     The gross amount of $25,290.00 will be held by Plaintiff's Counsel in its client trust fund account ("Client's Trust") and will be distributed to Plaintiff within forty-eight hours of the issuance by the Court of a Final Approval Order approving the Agreement and prior to the Plaintiffs filing a notice dismissing claims against Contractors with prejudice. Furthermore, prior to the issuance of payment from Plaintiff's client trust account to the Plaintiff, BMI may request that Plaintiff provide BMI with an I.R.S. Form W-4, as well as an I.R.S. Form W-9. However, BMI agrees that it will make payment to Plaintiff irrespective of Plaintiff's completion and production of an I.R.S. Form W-4 and/or an I.R.S. Form W-9. Furthermore, BMI agrees that Plaintiff may provide, and BMI will accept, an I.R.S Form W-9 solely for purposes of the non-wage income payment of $15,045.00 without regard to Plaintiff completion and production of an I.R.S. Form W-4. BMI further agrees that it shall notify Plaintiff's Counsel of any mandatory tax withholding resulting from these payments and Plaintiff's Counsel shall return such amounts to BMI out of the gross payment amount held in Plaintiff's Client Trust.

     The checks will be made out to O'Donoghue & O'Donoghue LLP to be deposited into a client trust account and mailed to Andrew Costa-Kelser, O'Donoghue & O'Donoghue LLP, 5301 Wisconsin Avenue NW, Suite 800, Washington, DC 20015, by overnight mail. This payment is in consideration for the promises and commitments set forth in this Agreement and is in full and final resolution of Plaintiff's claims against Contractors in the Lawsuit, and all claims Plaintiff has brought or could have brought against Contractors under FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, including for

any award of attorneys' fees and costs, for work performed on the Project, up until the date of this Agreement.

Under no circumstances shall Skanska be obligated to make payment to Plaintiff of the aforementioned amounts, should BMI fail to do so.

BMI further agrees to defend, indemnify and hold harmless Skanska for all reasonable attorneys' fees and costs incurred in connection with the Lawsuit and the Counterclaim, which amounts shall be paid from amounts specifically withheld by Skanska against the balance due to BMI under the Subcontract entered into with Skanska that have been expressly identified as withholdings related to the Lawsuit and the Counterclaim ("Withheld Funds"), which are separate and distinct from Subcontract retainage.  Skanska agrees to pay to BMI the Withheld Funds, less the reasonable attorneys' fees and costs incurred by Skanska in connection with the Lawsuit and the Counterclaim within 5 days after BMI pays funds due to Plaintiff.

3.    **Release**. In consideration for the promises and commitments set forth in this Agreement, including the payment provided in Section 2 of this Agreement, Plaintiff hereby releases and forever discharges Contractors, their subsidiaries and affiliates, officers, directors, insurers and successors and assigns of each, of and from any and all claims, obligations or causes of action for equitable relief, compensatory, punitive or other damages, employee benefits, expenses (including attorneys' fees and costs), reimbursements or compensation of any kind, arising under FLSA, VWPA, VOWA, and any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, for work performed on the Project, up until the date of this Agreement.

Plaintiff understands that by entering into this Agreement they are waiving the right to file a charge, lawsuit, complaint, or arbitration to assert any claim for additional relief against Contractors for any of these released claims under the FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law.

Plaintiff further agrees that they will withdraw any other pending charges, lawsuits, complaints, or arbitrations against Contractors, including any complaints made by Plaintiff to the Virginia Department of Labor and Industry, raising allegations for relief based upon any claim released in this Agreement. However, nothing herein shall prevent Plaintiff from filing an administrative claim in the future with any government agency under FLSA, VWPA, and VOWA. Provided, however, Plaintiff further agrees that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted, settled, or released in the Lawsuit that may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Contractors related to the Project.

This Agreement also shall not apply to claims for unemployment compensation benefits and any other claim that is not waivable as a matter of law. Plaintiff is not releasing claims that may arise in the future and other claims that cannot be released as a matter of law.

4.       **Settlement Approval, Settlement Timeline, and Mutual Cooperation**. The Parties agree that this Agreement is contingent upon its receiving final approval from the Court and becoming effective, and agree to the following timeline for seeking approval of the Agreement, completion of the settlement, and dismissal of the causes of action amongst the Parties in the Lawsuit:

a.       Within twenty-four hours of the full execution of this Agreement, BMI will send two checks totaling $25,290.00 to Plaintiff's counsel, as outlined in Section 2, *provided* that such monies will only be distributed to Plaintiff upon the Court's approval of a Motion for Approval of Settlement (the "Approval Motion"), as described below.

b.       Within fourteen (14) days of the full execution of this Agreement, Counsel for Plaintiff shall file a Motion for Approval of Settlement (the "Approval Motion").  Plaintiff's counsel will provide Contractors' Counsel with a draft of the Approval Motion for review and comment as soon as practicable and, in any event, no fewer than seven (7) days before filing it with the Court. Plaintiff will agree to make any reasonable edits proposed by Contractors before filing. Contractors agree not to oppose the Approval Motion should their proposed edits be incorporated. Along with the Approval Motion, Plaintiff's counsel also will file the Agreement and a Proposed Final Approval Order. Among other things, the Approval Motion will ask the Court to issue and enter a Final Approval Order, which will: (i.) approve the Settlement as a fair and reasonable resolution of *bona fide* disputes under the FLSA, (ii.) incorporate the terms of this Agreement, and (iii.) upon distribution from Plaintiff's Client Trust to Plaintiff of the of payment contemplated by Section 2, dismiss Plaintiff's claims against Contractors with prejudice and enter a final judgment with respect to the same consistent with the terms of this Agreement.

c.       This Agreement shall become effective upon the issuance by the Court of a Final Approval Order approving the settlement agreement, distribution from Plaintiff's Client Trust to Plaintiff of the payment contemplated by Section 2, dismissing Plaintiff's claims against Contractors with prejudice, and entering a final judgment with respect to the same consistent with the terms of this Agreement (the "Effective Date").  To the extent the Court fails to grant approval to the Agreement, or in the event that any appeal results in the settlement being found to be invalid, this Agreement will be null and void for all purposes in its entirety, subject to the provisions and procedures set forth in Section 5, *infra*.

d.       Within twenty-four hours of the clearance of the checks from Plaintiff's Client Trust, Plaintiff's counsel shall file a notice dismissing claims against Contractors with prejudice.

e.       Within seven (7) days of the Effective Date, in exchange for BMI's agreement to pay the amounts set forth in Section 2 including its agreement that Skanska's reasonable attorneys' fees and costs shall be paid from the Withheld Funds and Skanska's agreement to pay BMI the remaining Withheld Funds, and Plaintiff's agreement to dismiss the

claims against Skanska with prejudice, Skanska agrees to dismiss its cross-claims against BMI in the Lawsuit without prejudice. The terms of the Subcontract are continuing in nature and shall remain in full force and effect, and unless expressly stated herein are not modified by this Agreement.

        f.    The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement. The Parties shall use their reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiff's Counsel shall, with the assistance and cooperation of Contractors and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

    5.    **Termination of the Agreement**. Plaintiff or Contractors may terminate the Agreement if the Court declines to enter a Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or the Agreement does not become final for any other reason, provided that the Parties agree to work cooperatively and in good faith for a period of thirty (30) days, to address and resolve any concerns identified by the Court in declining to enter a Final Approval Order or a settlement in the form submitted by the Parties. To terminate this Agreement on the grounds specified above, the terminating Counsel (*i.e.*, Plaintiff's attorneys or counsel for either Contractor) shall give written notice to all other counsel no later than sixty (60) days after the relevant court action. In the event that this Agreement is terminated, or the settlement is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court, the Agreement and the releases contained herein shall be terminated and shall have no force or effect, Plaintiff's counsel shall return the Settlement Amount to BMI, neither Contractor shall have any obligation to make any payments under the Agreement, and no Party shall be bound by any of its terms.

    6.    **Non-Appeal.** Plaintiff and the Contractors each agree that none of them shall file any appeal of the Court's Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or otherwise challenge such an approval order.

    7.    **Prohibition on Press and Publicity Prior to Court Approval**. The Parties shall keep the terms of this Agreement confidential until Plaintiff files the Approval Motion, as set forth in Section 4.a, *supra*. Prior to Court approval, the Parties and their counsel agree that they will not (i.) issue a press release, disclose to, or otherwise notify the media about the terms of the proposed settlement agreement; and/or (ii.) advertise any of the terms of the proposed settlement agreement through written, recorded, or electronic communication. To the extent that the Parties and/or their respective counsel are contacted by the media about this Agreement and/or the settlement it memorializes prior to Plaintiff filing the Approval Motion, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a tentative settlement subject to court approval, and that the Parties and their counsel believe they have reached a fair and reasonable settlement of the disputed claims.

The foregoing notwithstanding, at any time, including prior to Court Approval, the Parties also shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings or administrative actions in other matters a summary of the terms of this Agreement. Similarly, at any time, including prior to Court approval, Plaintiff also shall have the right to disclose the Agreement to her tax and legal advisors and spouse (if any). For avoidance of doubt, the Parties agree that nothing in this section prevents a Party from disclosing the terms of this Agreement subsequent to Court Approval of the Approval Motion filed by Plaintiff.

The Parties further agree that nothing in this section prevents a Party from moving to enforce this Agreement.

8.   **Arm's Length Transaction**. The terms and conditions of this Agreement are the result of arm's-length negotiations between the Parties. Accordingly, this Agreement is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

9.   **No Assignment**. Plaintiff, BMI, and Skanska represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action, and any attempt to do so shall be of no force or effect.

10.   **Non-Precedential**. This Agreement does not set a precedent for any other dispute between the parties, and may not be referenced or introduced by any party in any other proceeding, except one involving Plaintiff.

11.   **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Virginia, without regard to choice of law principles, except to the extent that the laws of the United States governs any matter set forth herein, in which case such federal law shall govern.

12.   **Entire Agreement**. The Parties understand that this Agreement constitutes the entire agreement among Plaintiff and Contractors with respect to the subject matter thereof.

13.   **Waivers and Modifications**. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment.  Any failure by any Party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14.   **Counterparts**. This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute the same agreement.

[*SIGNATURES ON FOLLOWING PAGE*]

**Jose Alejandro Mendoza**

*Jose A Mendoza*
Dated: 04/13/2023

**Brother's Mechanical, Inc.**

Dated: 4/17/23

**Skanska USA Building Inc. d/b/a Skanska**

Dated: 4/17/23

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| ALAN N. VARA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:22-cv-01180 |
| | )                 MSN-IDD |
| SKANSKA USA BUILDING INC. D/B/A | ) |
| SKANSKA, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT STIPULATION OF SETTLEMENT AND SETTLEMENT AGREEMENT

This Joint Stipulation of Settlement and Settlement Agreement ("Agreement") is made and entered into by and among Brother's Mechanical, Inc. ("BMI"), Skanska USA Building Inc. d/b/a Skanska. ("Skanska") (collectively referred to as "Contractors"), and Miguel A. Cardona ("Plaintiff"), collectively the "Parties," for the purposes of resolving and settling the claims amongst the Parties in *Vara, et al. v. Skanska USA Building Inc. d/b/a Skanska, et al.*, Civil Action No. 1:22-cv-01180, filed in the United States District Court for the Eastern District of Virginia ("Lawsuit").

**WHEREAS**, Plaintiff filed a Lawsuit against Contractors, as well as DayCJ Plumbing & Mechanical, Inc. and Edgar Jimenez, to collect allegedly unpaid wages, plus statutory damages, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 ("VWPA"), and the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA") for work performed at the Scotts Run Commercial and Residential Complex in Tysons Corner, Virginia ("the Project").

**WHEREAS**, Skanska filed a cross-claim in the Lawsuit against BMI demanding pursuant to BMI's subcontract with Skanska for the Project ("Subcontract") that BMI defend, indemnify and hold harmless Skanska against any and all damages arising out of Plaintiff's claims, including Skanska's attorneys' fees and costs.

**WHEREAS**, the Parties desire to resolve and settle all claims that Plaintiff has or may have against Contractors arising from this Lawsuit;

**WHEREAS,** BMI has agreed to pay the gross amount of $186,267.50 to all of the Plaintiffs in the Lawsuit, which will be deposited into Plaintiffs' Counsel's client trust account within twenty-four hours of execution of each Plaintiff's settlement agreement, to be distributed to the Plaintiffs only if the Court approves the Approval Motion and, if the Approval Motion is not approved by the Court, the gross sum of $186,267.50 will be returned to BMI;

**NOW, THEREFORE**, in consideration of the covenants, mutual promises, and agreements and payment contained in this Agreement and intending to be legally bound, the Parties agree as follows:

1.      **No Admission**. Contractors have entered into this Agreement to avoid the expense, uncertainty, and delay of further litigation. Contractors expressly deny that they are separately or jointly liable or owe any unpaid wages or other damages to Plaintiff or anyone else with respect to the alleged facts or causes of actions which were asserted, or could have been asserted, in the Lawsuit.  In no event shall this Agreement be used as evidence of liability or wrongdoing by Contractors.

2.      <u>**Payment and Representation by Contractors**</u>. In consideration for the terms and actions outlined in this Agreement, BMI, within twenty-four hours of the full execution of this Agreement, will pay to Plaintiff's Counsel the gross amount of $33,600.00 ("Settlement Amount"), representing:

      a.      $12,137.50 in unpaid wages; and

      b.      $21,462.50 in liquidated damages, which shall be treated as non-wage income.

The gross amount of $33,600.00 will be held by Plaintiff's Counsel in its client trust fund account ("Client's Trust") and will be distributed to Plaintiff within forty-eight hours of the issuance by the Court of a Final Approval Order approving the Agreement and prior to the Plaintiffs filing a notice dismissing claims against Contractors with prejudice.  Furthermore, prior to the issuance of payment from Plaintiff's client trust account to the Plaintiff, BMI may request that Plaintiff provide BMI with an I.R.S. Form W-4, as well as an I.R.S. Form W-9.  However, BMI agrees that it will make payment to Plaintiff irrespective of Plaintiff's completion and production of an I.R.S. Form W-4 and/or an I.R.S. Form W-9.  Furthermore, BMI agrees that Plaintiff may provide, and BMI will accept, an I.R.S Form W-9 solely for purposes of the non-wage income payment of $21,462.50 without regard to Plaintiff completion and production of an I.R.S. Form W-4.  BMI further agrees that it shall notify Plaintiff's Counsel of any mandatory tax withholding resulting from these payments and Plaintiff's Counsel shall return such amounts to BMI out of the gross payment amount held in Plaintiff's Client Trust.

The checks will be made out to O'Donoghue & O'Donoghue LLP to be deposited into a client trust account and mailed to Andrew Costa-Kelser, O'Donoghue & O'Donoghue LLP, 5301 Wisconsin Avenue NW, Suite 800, Washington, DC 20015, by overnight mail. This payment is in consideration for the promises and commitments set forth in this Agreement and is in full and final resolution of Plaintiff's claims against Contractors in the Lawsuit, and all claims Plaintiff has brought or could have brought against Contractors under FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, including for

any award of attorneys' fees and costs, for work performed on the Project, up until the date of this Agreement.

Under no circumstances shall Skanska be obligated to make payment to Plaintiff of the aforementioned amounts, should BMI fail to do so.

BMI further agrees to defend, indemnify and hold harmless Skanska for all reasonable attorneys' fees and costs incurred in connection with the Lawsuit and the Counterclaim, which amounts shall be paid from amounts specifically withheld by Skanska against the balance due to BMI under the Subcontract entered into with Skanska that have been expressly identified as withholdings related to the Lawsuit and the Counterclaim ("Withheld Funds"), which are separate and distinct from Subcontract retainage. Skanska agrees to pay to BMI the Withheld Funds, less the reasonable attorneys' fees and costs incurred by Skanska in connection with the Lawsuit and the Counterclaim within 5 days after BMI pays funds due to Plaintiff.

3.    **Release**. In consideration for the promises and commitments set forth in this Agreement, including the payment provided in Section 2 of this Agreement, Plaintiff hereby releases and forever discharges Contractors, their subsidiaries and affiliates, officers, directors, insurers and successors and assigns of each, of and from any and all claims, obligations or causes of action for equitable relief, compensatory, punitive or other damages, employee benefits, expenses (including attorneys' fees and costs), reimbursements or compensation of any kind, arising under FLSA, VWPA, VOWA, and any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, for work performed on the Project, up until the date of this Agreement.

Plaintiff understands that by entering into this Agreement they are waiving the right to file a charge, lawsuit, complaint, or arbitration to assert any claim for additional relief against Contractors for any of these released claims under the FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law.

Plaintiff further agrees that they will withdraw any other pending charges, lawsuits, complaints, or arbitrations against Contractors, including any complaints made by Plaintiff to the Virginia Department of Labor and Industry, raising allegations for relief based upon any claim released in this Agreement. However, nothing herein shall prevent Plaintiff from filing an administrative claim in the future with any government agency under FLSA, VWPA, and VOWA. Provided, however, Plaintiff further agrees that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted, settled, or released in the Lawsuit that may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Contractors related to the Project.

This Agreement also shall not apply to claims for unemployment compensation benefits and any other claim that is not waivable as a matter of law. Plaintiff is not releasing claims that may arise in the future and other claims that cannot be released as a matter of law.

4. **Settlement Approval, Settlement Timeline, and Mutual Cooperation**. The Parties agree that this Agreement is contingent upon its receiving final approval from the Court and becoming effective, and agree to the following timeline for seeking approval of the Agreement, completion of the settlement, and dismissal of the causes of action amongst the Parties in the Lawsuit:

a. Within twenty-four hours of the full execution of this Agreement, BMI will send two checks totaling $33,600.00 to Plaintiff's counsel, as outlined in Section 2, *provided* that such monies will only be distributed to Plaintiff upon the Court's approval of a Motion for Approval of Settlement (the "Approval Motion"), as described below.

b. Within fourteen (14) days of the full execution of this Agreement, Counsel for Plaintiff shall file a Motion for Approval of Settlement (the "Approval Motion"). Plaintiff's counsel will provide Contractors' Counsel with a draft of the Approval Motion for review and comment as soon as practicable and, in any event, no fewer than seven (7) days before filing it with the Court. Plaintiff will agree to make any reasonable edits proposed by Contractors before filing. Contractors agree not to oppose the Approval Motion should their proposed edits be incorporated. Along with the Approval Motion, Plaintiff's counsel also will file the Agreement and a Proposed Final Approval Order. Among other things, the Approval Motion will ask the Court to issue and enter a Final Approval Order, which will: (i.) approve the Settlement as a fair and reasonable resolution of *bona fide* disputes under the FLSA, (ii.) incorporate the terms of this Agreement, and (iii.) upon distribution from Plaintiff's Client Trust to Plaintiff of the of payment contemplated by Section 2, dismiss Plaintiff's claims against Contractors with prejudice and enter a final judgment with respect to the same consistent with the terms of this Agreement.

c. This Agreement shall become effective upon the issuance by the Court of a Final Approval Order approving the settlement agreement, distribution from Plaintiff's Client Trust to Plaintiff of the payment contemplated by Section 2, dismissing Plaintiff's claims against Contractors with prejudice, and entering a final judgment with respect to the same consistent with the terms of this Agreement (the "Effective Date"). To the extent the Court fails to grant approval to the Agreement, or in the event that any appeal results in the settlement being found to be invalid, this Agreement will be null and void for all purposes in its entirety, subject to the provisions and procedures set forth in Section 5, *infra*.

d. Within twenty-four hours of the clearance of the checks from Plaintiff's Client Trust, Plaintiff's counsel shall file a notice dismissing claims against Contractors with prejudice.

e. Within seven (7) days of the Effective Date, in exchange for BMI's agreement to pay the amounts set forth in Section 2 including its agreement that Skanska's reasonable attorneys' fees and costs shall be paid from the Withheld Funds and Skanska's agreement to pay BMI the remaining Withheld Funds, and Plaintiff's agreement to dismiss the

claims against Skanska with prejudice, Skanska agrees to dismiss its cross-claims against BMI in the Lawsuit without prejudice.  The terms of the Subcontract are continuing in nature and shall remain in full force and effect, and unless expressly stated herein are not modified by this Agreement.

       f.    The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement. The Parties shall use their reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiff's Counsel shall, with the assistance and cooperation of Contractors and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

5.    **Termination of the Agreement**. Plaintiff or Contractors may terminate the Agreement if the Court declines to enter a Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or the Agreement does not become final for any other reason, provided that the Parties agree to work cooperatively and in good faith for a period of thirty (30) days, to address and resolve any concerns identified by the Court in declining to enter a Final Approval Order or a settlement in the form submitted by the Parties.  To terminate this Agreement on the grounds specified above, the terminating Counsel (*i.e.*, Plaintiff's attorneys or counsel for either Contractor) shall give written notice to all other counsel no later than sixty (60) days after the relevant court action.  In the event that this Agreement is terminated, or the settlement is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court, the Agreement and the releases contained herein shall be terminated and shall have no force or effect, Plaintiff's counsel shall return the Settlement Amount to BMI, neither Contractor shall have any obligation to make any payments under the Agreement, and no Party shall be bound by any of its terms.

6.    **Non-Appeal.**  Plaintiff and the Contractors each agree that none of them shall file any appeal of the Court's Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or otherwise challenge such an approval order.

7.    **Prohibition on Press and Publicity Prior to Court Approval**. The Parties shall keep the terms of this Agreement confidential until Plaintiff files the Approval Motion, as set forth in Section 4.a, *supra*. Prior to Court approval, the Parties and their counsel agree that they will not (i.) issue a press release, disclose to, or otherwise notify the media about the terms of the proposed settlement agreement; and/or (ii.) advertise any of the terms of the proposed settlement agreement through written, recorded, or electronic communication. To the extent that the Parties and/or their respective counsel are contacted by the media about this Agreement and/or the settlement it memorializes prior to Plaintiff filing the Approval Motion, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a tentative settlement subject to court approval, and that the Parties and their counsel believe they have reached a fair and reasonable settlement of the disputed claims.

The foregoing notwithstanding, at any time, including prior to Court Approval, the Parties also shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings or administrative actions in other matters a summary of the terms of this Agreement. Similarly, at any time, including prior to Court approval, Plaintiff also shall have the right to disclose the Agreement to her tax and legal advisors and spouse (if any). For avoidance of doubt, the Parties agree that nothing in this section prevents a Party from disclosing the terms of this Agreement subsequent to Court Approval of the Approval Motion filed by Plaintiff.

The Parties further agree that nothing in this section prevents a Party from moving to enforce this Agreement.

8.      **Arm's Length Transaction**. The terms and conditions of this Agreement are the result of arm's-length negotiations between the Parties. Accordingly, this Agreement is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

9.      **No Assignment**. Plaintiff, BMI, and Skanska represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action, and any attempt to do so shall be of no force or effect.

10.     **Non-Precedential**. This Agreement does not set a precedent for any other dispute between the parties, and may not be referenced or introduced by any party in any other proceeding, except one involving Plaintiff.

11.     **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Virginia, without regard to choice of law principles, except to the extent that the laws of the United States governs any matter set forth herein, in which case such federal law shall govern.

12.     **Entire Agreement**. The Parties understand that this Agreement constitutes the entire agreement among Plaintiff and Contractors with respect to the subject matter thereof.

13.     **Waivers and Modifications**. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment. Any failure by any Party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14.     **Counterparts**. This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute the same agreement.

[*SIGNATURES ON FOLLOWING PAGE*]

**Miguel A. Cardona**

Dated: 04/13/2023

**Brother's Mechanical, Inc.**

Dated: 4/17/23

**Skanska USA Building Inc. d/b/a Skanska**

Dated: 4/17/23

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ALAN N. VARA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:22-cv-01180 |
| | ) MSN-IDD |
| SKANSKA USA BUILDING INC. D/B/A | ) |
| SKANSKA, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT STIPULATION OF SETTLEMENT AND SETTLEMENT AGREEMENT

This Joint Stipulation of Settlement and Settlement Agreement ("Agreement") is made and entered into by and among Brother's Mechanical, Inc. ("BMI"), Skanska USA Building Inc. d/b/a Skanska. ("Skanska") (collectively referred to as "Contractors"), and Milton Matute ("Plaintiff"), collectively the "Parties," for the purposes of resolving and settling the claims amongst the Parties in *Vara, et al. v. Skanska USA Building Inc. d/b/a Skanska, et al.*, Civil Action No. 1:22-cv-01180, filed in the United States District Court for the Eastern District of Virginia ("Lawsuit").

**WHEREAS**, Plaintiff filed a Lawsuit against Contractors, as well as DayCJ Plumbing & Mechanical, Inc. and Edgar Jimenez, to collect allegedly unpaid wages, plus statutory damages, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 ("VWPA"), and the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA") for work performed at the Scotts Run Commercial and Residential Complex in Tysons Corner, Virginia ("the Project").

**WHEREAS**, Skanska filed a cross-claim in the Lawsuit against BMI demanding pursuant to BMI's subcontract with Skanska for the Project ("Subcontract") that BMI defend, indemnify and hold harmless Skanska against any and all damages arising out of Plaintiff's claims, including Skanska's attorneys' fees and costs.

**WHEREAS**, the Parties desire to resolve and settle all claims that Plaintiff has or may have against Contractors arising from this Lawsuit;

**WHEREAS,** BMI has agreed to pay the gross amount of $186,267.50 to all of the Plaintiffs in the Lawsuit, which will be deposited into Plaintiffs' Counsel's client trust account within twenty-four hours of execution of each Plaintiff's settlement agreement, to be distributed to the Plaintiffs only if the Court approves the Approval Motion and, if the Approval Motion is not approved by the Court, the gross sum of $186,267.50 will be returned to BMI;

**NOW, THEREFORE**, in consideration of the covenants, mutual promises, and agreements and payment contained in this Agreement and intending to be legally bound, the Parties agree as follows:

1. **No Admission**. Contractors have entered into this Agreement to avoid the expense, uncertainty, and delay of further litigation. Contractors expressly deny that they are separately or jointly liable or owe any unpaid wages or other damages to Plaintiff or anyone else with respect to the alleged facts or causes of actions which were asserted, or could have been asserted, in the Lawsuit.  In no event shall this Agreement be used as evidence of liability or wrongdoing by Contractors.

2. **Payment and Representation by Contractors**. In consideration for the terms and actions outlined in this Agreement, BMI, within twenty-four hours of the full execution of this Agreement, will pay to Plaintiff's Counsel the gross amount of $23,310.00 ("Settlement Amount"), representing:

    a.    $9,255.00 in unpaid wages; and

    b.    $14,055.00 in liquidated damages, which shall be treated as non-wage income.

The gross amount of $23,310.00 will be held by Plaintiff's Counsel in its client trust fund account ("Client's Trust") and will be distributed to Plaintiff within forty-eight hours of the issuance by the Court of a Final Approval Order approving the Agreement and prior to the Plaintiffs filing a notice dismissing claims against Contractors with prejudice.  Furthermore, prior to the issuance of payment from Plaintiff's client trust account to the Plaintiff, BMI may request that Plaintiff provide BMI with an I.R.S. Form W-4, as well as an I.R.S. Form W-9.  However, BMI agrees that it will make payment to Plaintiff irrespective of Plaintiff's completion and production of an I.R.S. Form W-4 and/or an I.R.S. Form W-9.  Furthermore, BMI agrees that Plaintiff may provide, and BMI will accept, an I.R.S Form W-9 solely for purposes of the non-wage income payment of $14,055.00 without regard to Plaintiff completion and production of an I.R.S. Form W-4.  BMI further agrees that it shall notify Plaintiff's Counsel of any mandatory tax withholding resulting from these payments and Plaintiff's Counsel shall return such amounts to BMI out of the gross payment amount held in Plaintiff's Client Trust.

The checks will be made out to O'Donoghue & O'Donoghue LLP to be deposited into a client trust account and mailed to Andrew Costa-Kelser, O'Donoghue & O'Donoghue LLP, 5301 Wisconsin Avenue NW, Suite 800, Washington, DC 20015, by overnight mail. This payment is in consideration for the promises and commitments set forth in this Agreement and is in full and final resolution of Plaintiff's claims against Contractors in the Lawsuit, and all claims Plaintiff has brought or could have brought against Contractors under FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, including for any award of attorneys' fees and costs, for work performed on the Project, up until the date of this Agreement.

Under no circumstances shall Skanska be obligated to make payment to Plaintiff of the aforementioned amounts, should BMI fail to do so.

BMI further agrees to defend, indemnify and hold harmless Skanska for all reasonable attorneys' fees and costs incurred in connection with the Lawsuit and the Counterclaim, which amounts shall be paid from amounts specifically withheld by Skanska against the balance due to BMI under the Subcontract entered into with Skanska that have been expressly identified as withholdings related to the Lawsuit and the Counterclaim ("Withheld Funds"), which are separate and distinct from Subcontract retainage.  Skanska agrees to pay to BMI the Withheld Funds, less the reasonable attorneys' fees and costs incurred by Skanska in connection with the Lawsuit and the Counterclaim within 5 days after BMI pays funds due to Plaintiff.

3.     **Release**. In consideration for the promises and commitments set forth in this Agreement, including the payment provided in Section 2 of this Agreement, Plaintiff hereby releases and forever discharges Contractors, their subsidiaries and affiliates, officers, directors, insurers and successors and assigns of each, of and from any and all claims, obligations or causes of action for equitable relief, compensatory, punitive or other damages, employee benefits, expenses (including attorneys' fees and costs), reimbursements or compensation of any kind, arising under FLSA, VWPA, VOWA, and any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, for work performed on the Project, up until the date of this Agreement.

Plaintiff understands that by entering into this Agreement they are waiving the right to file a charge, lawsuit, complaint, or arbitration to assert any claim for additional relief against Contractors for any of these released claims under the FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law.

Plaintiff further agrees that they will withdraw any other pending charges, lawsuits, complaints, or arbitrations against Contractors, including any complaints made by Plaintiff to the Virginia Department of Labor and Industry, raising allegations for relief based upon any claim released in this Agreement. However, nothing herein shall prevent Plaintiff from filing an administrative claim in the future with any government agency under FLSA, VWPA, and VOWA. Provided, however, Plaintiff further agrees that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted, settled, or released in the Lawsuit that may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Contractors related to the Project.

This Agreement also shall not apply to claims for unemployment compensation benefits and any other claim that is not waivable as a matter of law. Plaintiff is not releasing claims that may arise in the future and other claims that cannot be released as a matter of law.

4.     **Settlement Approval, Settlement Timeline, and Mutual Cooperation**. The Parties agree that this Agreement is contingent upon its receiving final approval from the Court and becoming effective, and agree to the following timeline for seeking approval of the Agreement, completion of the settlement, and dismissal of the causes of action amongst the Parties in the Lawsuit:

a.     Within twenty-four hours of the full execution of this Agreement, BMI will send two checks totaling $23,310.00 to Plaintiff's counsel, as outlined in Section 2, *provided* that such monies will only be distributed to Plaintiff upon the Court's approval of a Motion for Approval of Settlement (the "Approval Motion"), as described below.

b.     Within fourteen (14) days of the full execution of this Agreement, Counsel for Plaintiff shall file a Motion for Approval of Settlement (the "Approval Motion"). Plaintiff's counsel will provide Contractors' Counsel with a draft of the Approval Motion for review and comment as soon as practicable and, in any event, no fewer than seven (7) days before filing it with the Court. Plaintiff will agree to make any reasonable edits proposed by Contractors before filing. Contractors agree not to oppose the Approval Motion should their proposed edits be incorporated. Along with the Approval Motion, Plaintiff's counsel also will file the Agreement and a Proposed Final Approval Order. Among other things, the Approval Motion will ask the Court to issue and enter a Final Approval Order, which will: (i.) approve the Settlement as a fair and reasonable resolution of *bona fide* disputes under the FLSA, (ii.) incorporate the terms of this Agreement, and (iii.) upon distribution from Plaintiff's Client Trust to Plaintiff of the of payment contemplated by Section 2, dismiss Plaintiff's claims against Contractors with prejudice and enter a final judgment with respect to the same consistent with the terms of this Agreement.

c.     This Agreement shall become effective upon the issuance by the Court of a Final Approval Order approving the settlement agreement, distribution from Plaintiff's Client Trust to Plaintiff of the payment contemplated by Section 2, dismissing Plaintiff's claims against Contractors with prejudice, and entering a final judgment with respect to the same consistent with the terms of this Agreement (the "Effective Date"). To the extent the Court fails to grant approval to the Agreement, or in the event that any appeal results in the settlement being found to be invalid, this Agreement will be null and void for all purposes in its entirety, subject to the provisions and procedures set forth in Section 5, *infra*.

d.     Within twenty-four hours of the clearance of the checks from Plaintiff's Client Trust, Plaintiff's counsel shall file a notice dismissing claims against Contractors with prejudice.

e.     Within seven (7) days of the Effective Date, in exchange for BMI's agreement to pay the amounts set forth in Section 2 including its agreement that Skanska's reasonable attorneys' fees and costs shall be paid from the Withheld Funds and Skanska's agreement to pay BMI the remaining Withheld Funds, and Plaintiff's agreement to dismiss the claims against Skanska with prejudice, Skanska agrees to dismiss its cross-claims against BMI in the Lawsuit without prejudice. The terms of the Subcontract are continuing in nature and shall remain in full force and effect, and unless expressly stated herein are not modified by this Agreement.

f.      The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement. The Parties shall use their reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiff's Counsel shall, with the assistance and cooperation of Contractors and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

5.      **Termination of the Agreement**. Plaintiff or Contractors may terminate the Agreement if the Court declines to enter a Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or the Agreement does not become final for any other reason, provided that the Parties agree to work cooperatively and in good faith for a period of thirty (30) days, to address and resolve any concerns identified by the Court in declining to enter a Final Approval Order or a settlement in the form submitted by the Parties.  To terminate this Agreement on the grounds specified above, the terminating Counsel (*i.e.*, Plaintiff's attorneys or counsel for either Contractor) shall give written notice to all other counsel no later than sixty (60) days after the relevant court action.  In the event that this Agreement is terminated, or the settlement is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court, the Agreement and the releases contained herein shall be terminated and shall have no force or effect, Plaintiff's counsel shall return the Settlement Amount to BMI, neither Contractor shall have any obligation to make any payments under the Agreement, and no Party shall be bound by any of its terms.

6.      **Non-Appeal.**  Plaintiff and the Contractors each agree that none of them shall file any appeal of the Court's Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or otherwise challenge such an approval order.

7.      **Prohibition on Press and Publicity Prior to Court Approval**. The Parties shall keep the terms of this Agreement confidential until Plaintiff files the Approval Motion, as set forth in Section 4.a, *supra*. Prior to Court approval, the Parties and their counsel agree that they will not (i.) issue a press release, disclose to, or otherwise notify the media about the terms of the proposed settlement agreement; and/or (ii.) advertise any of the terms of the proposed settlement agreement through written, recorded, or electronic communication. To the extent that the Parties and/or their respective counsel are contacted by the media about this Agreement and/or the settlement it memorializes prior to Plaintiff filing the Approval Motion, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a tentative settlement subject to court approval, and that the Parties and their counsel believe they have reached a fair and reasonable settlement of the disputed claims.

The foregoing notwithstanding, at any time, including prior to Court Approval, the Parties also shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings or administrative actions in other matters a summary of the terms of this Agreement. Similarly, at any time, including prior to Court approval, Plaintiff also shall have the right to

disclose the Agreement to her tax and legal advisors and spouse (if any). For avoidance of doubt, the Parties agree that nothing in this section prevents a Party from disclosing the terms of this Agreement subsequent to Court Approval of the Approval Motion filed by Plaintiff.

The Parties further agree that nothing in this section prevents a Party from moving to enforce this Agreement.

8.      **Arm's Length Transaction**. The terms and conditions of this Agreement are the result of arm's-length negotiations between the Parties. Accordingly, this Agreement is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

9.      **No Assignment**. Plaintiff, BMI, and Skanska represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action, and any attempt to do so shall be of no force or effect.

10.     **Non-Precedential**. This Agreement does not set a precedent for any other dispute between the parties, and may not be referenced or introduced by any party in any other proceeding, except one involving Plaintiff.

11.     **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Virginia, without regard to choice of law principles, except to the extent that the laws of the United States governs any matter set forth herein, in which case such federal law shall govern.

12.     **Entire Agreement**. The Parties understand that this Agreement constitutes the entire agreement among Plaintiff and Contractors with respect to the subject matter thereof.

13.     **Waivers and Modifications**. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment. Any failure by any Party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14.     **Counterparts**. This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute the same agreement.

[*SIGNATURES ON FOLLOWING PAGE*]

**Milton Matute**

Dated: 04-13-2023


**Brother's Mechanical, Inc.**

Dated: 4|17|23


**Skanska USA Building Inc. d/b/a Skanska**

Dated: 4|17|23

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ALAN N. VARA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:22-cv-01180 |
| | )               MSN-IDD |
| SKANSKA USA BUILDING INC. D/B/A | ) |
| SKANSKA, et al., | ) |
| | ) |
| Defendants. | ) |

## JOINT STIPULATION OF SETTLEMENT AND SETTLEMENT AGREEMENT

This Joint Stipulation of Settlement and Settlement Agreement ("Agreement") is made and entered into by and among Brother's Mechanical, Inc. ("BMI"), Skanska USA Building Inc. d/b/a Skanska. ("Skanska") (collectively referred to as "Contractors"), and Maira Cribas ("Plaintiff"), collectively the "Parties," for the purposes of resolving and settling the claims amongst the Parties in *Vara, et al. v. Skanska USA Building Inc. d/b/a Skanska, et al.*, Civil Action No. 1:22-cv-01180, filed in the United States District Court for the Eastern District of Virginia ("Lawsuit").

**WHEREAS**, Plaintiff filed a Lawsuit against Contractors, as well as DayCJ Plumbing & Mechanical, Inc. and Edgar Jimenez, to collect allegedly unpaid wages, plus statutory damages, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 ("VWPA"), and the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA") for work performed at the Scotts Run Commercial and Residential Complex in Tysons Corner, Virginia ("the Project").

**WHEREAS**, Skanska filed a cross-claim in the Lawsuit against BMI demanding pursuant to BMI's subcontract with Skanska for the Project ("Subcontract") that BMI defend, indemnify and hold harmless Skanska against any and all damages arising out of Plaintiff's claims, including Skanska's attorneys' fees and costs.

**WHEREAS**, the Parties desire to resolve and settle all claims that Plaintiff has or may have against Contractors arising from this Lawsuit;

**WHEREAS,** BMI has agreed to pay the gross amount of $186,267.50 to all of the Plaintiffs in the Lawsuit, which will be deposited into Plaintiffs' Counsel's client trust account within twenty-four hours of execution of each Plaintiff's settlement agreement, to be distributed to the Plaintiffs only if the Court approves the Approval Motion and, if the Approval Motion is not approved by the Court, the gross sum of $186,267.50 will be returned to BMI;

**NOW, THEREFORE**, in consideration of the covenants, mutual promises, and agreements and payment contained in this Agreement and intending to be legally bound, the Parties agree as follows:

1.    **No Admission**. Contractors have entered into this Agreement to avoid the expense, uncertainty, and delay of further litigation. Contractors expressly deny that they are separately or jointly liable or owe any unpaid wages or other damages to Plaintiff or anyone else with respect to the alleged facts or causes of actions which were asserted, or could have been asserted, in the Lawsuit.  In no event shall this Agreement be used as evidence of liability or wrongdoing by Contractors.

2.    **Payment and Representation by Contractors**. In consideration for the terms and actions outlined in this Agreement, BMI, within twenty-four hours of the full execution of this Agreement, will pay to Plaintiff's Counsel the gross amount of $16,338.00 ("Settlement Amount"), representing:

   a.    $7,161.00 in unpaid wages; and

   b.    $9,177.00 in liquidated damages, which shall be treated as non-wage income.

The gross amount of $16,338.00 will be held by Plaintiff's Counsel in its client trust fund account ("Client's Trust") and will be distributed to Plaintiff within forty-eight hours of the issuance by the Court of a Final Approval Order approving the Agreement and prior to the Plaintiffs filing a notice dismissing claims against Contractors with prejudice.  Furthermore, prior to the issuance of payment from Plaintiff's client trust account to the Plaintiff, BMI may request that Plaintiff provide BMI with an I.R.S. Form W-4, as well as an I.R.S. Form W-9.  However, BMI agrees that it will make payment to Plaintiff irrespective of Plaintiff's completion and production of an I.R.S. Form W-4 and/or an I.R.S. Form W-9.  Furthermore, BMI agrees that Plaintiff may provide, and BMI will accept, an I.R.S Form W-9 solely for purposes of the non-wage income payment of $9,177.00 without regard to Plaintiff completion and production of an I.R.S. Form W-4.  BMI further agrees that it shall notify Plaintiff's Counsel of any mandatory tax withholding resulting from these payments and Plaintiff's Counsel shall return such amounts to BMI out of the gross payment amount held in Plaintiff's Client Trust.

The checks will be made out to O'Donoghue & O'Donoghue LLP to be deposited into a client trust account and mailed to Andrew Costa-Kelser, O'Donoghue & O'Donoghue LLP, 5301 Wisconsin Avenue NW, Suite 800, Washington, DC 20015, by overnight mail. This payment is in consideration for the promises and commitments set forth in this Agreement and is in full and final resolution of Plaintiff's claims against Contractors in the Lawsuit, and all claims Plaintiff has brought or could have brought against Contractors under FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, including for any award of attorneys' fees and costs, for work performed on the Project, up until the date of this Agreement.

Under no circumstances shall Skanska be obligated to make payment to Plaintiff of the aforementioned amounts, should BMI fail to do so.

BMI further agrees to defend, indemnify and hold harmless Skanska for all reasonable attorneys' fees and costs incurred in connection with the Lawsuit and the Counterclaim, which amounts shall be paid from amounts specifically withheld by Skanska against the balance due to BMI under the Subcontract entered into with Skanska that have been expressly identified as withholdings related to the Lawsuit and the Counterclaim ("Withheld Funds"), which are separate and distinct from Subcontract retainage. Skanska agrees to pay to BMI the Withheld Funds, less the reasonable attorneys' fees and costs incurred by Skanska in connection with the Lawsuit and the Counterclaim within 5 days after BMI pays funds due to Plaintiff.

3.    **Release**. In consideration for the promises and commitments set forth in this Agreement, including the payment provided in Section 2 of this Agreement, Plaintiff hereby releases and forever discharges Contractors, their subsidiaries and affiliates, officers, directors, insurers and successors and assigns of each, of and from any and all claims, obligations or causes of action for equitable relief, compensatory, punitive or other damages, employee benefits, expenses (including attorneys' fees and costs), reimbursements or compensation of any kind, arising under FLSA, VWPA, VOWA, and any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law, for work performed on the Project, up until the date of this Agreement.

Plaintiff understands that by entering into this Agreement they are waiving the right to file a charge, lawsuit, complaint, or arbitration to assert any claim for additional relief against Contractors for any of these released claims under the FLSA, VWPA, VOWA, or any other applicable federal, state, or local wage and hour laws, as well as for allegedly unpaid wages or earnings as a matter of contract, quasi-contract, *quantum meruit*, or other applicable common law.

Plaintiff further agrees that they will withdraw any other pending charges, lawsuits, complaints, or arbitrations against Contractors, including any complaints made by Plaintiff to the Virginia Department of Labor and Industry, raising allegations for relief based upon any claim released in this Agreement. However, nothing herein shall prevent Plaintiff from filing an administrative claim in the future with any government agency under FLSA, VWPA, and VOWA. Provided, however, Plaintiff further agrees that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted, settled, or released in the Lawsuit that may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Contractors related to the Project.

This Agreement also shall not apply to claims for unemployment compensation benefits and any other claim that is not waivable as a matter of law. Plaintiff is not releasing claims that may arise in the future and other claims that cannot be released as a matter of law.

4.      <u>**Settlement Approval, Settlement Timeline, and Mutual Cooperation**</u>. The Parties agree that this Agreement is contingent upon its receiving final approval from the Court and becoming effective, and agree to the following timeline for seeking approval of the Agreement, completion of the settlement, and dismissal of the causes of action amongst the Parties in the Lawsuit:

a.      Within twenty-four hours of the full execution of this Agreement, BMI will send two checks totaling $16,338.00 to Plaintiff's counsel, as outlined in Section 2, *provided* that such monies will only be distributed to Plaintiff upon the Court's approval of a Motion for Approval of Settlement (the "Approval Motion"), as described below.

b.      Within fourteen (14) days of the full execution of this Agreement, Counsel for Plaintiff shall file a Motion for Approval of Settlement (the "Approval Motion").  Plaintiff's counsel will provide Contractors' Counsel with a draft of the Approval Motion for review and comment as soon as practicable and, in any event, no fewer than seven (7) days before filing it with the Court. Plaintiff will agree to make any reasonable edits proposed by Contractors before filing. Contractors agree not to oppose the Approval Motion should their proposed edits be incorporated. Along with the Approval Motion, Plaintiff's counsel also will file the Agreement and a Proposed Final Approval Order. Among other things, the Approval Motion will ask the Court to issue and enter a Final Approval Order, which will: (i.) approve the Settlement as a fair and reasonable resolution of *bona fide* disputes under the FLSA, (ii.) incorporate the terms of this Agreement, and (iii.) upon distribution from Plaintiff's Client Trust to Plaintiff of the of payment contemplated by Section 2, dismiss Plaintiff's claims against Contractors with prejudice and enter a final judgment with respect to the same consistent with the terms of this Agreement.

c.      This Agreement shall become effective upon the issuance by the Court of a Final Approval Order approving the settlement agreement, distribution from Plaintiff's Client Trust to Plaintiff of the payment contemplated by Section 2, dismissing Plaintiff's claims against Contractors with prejudice, and entering a final judgment with respect to the same consistent with the terms of this Agreement (the "Effective Date").  To the extent the Court fails to grant approval to the Agreement, or in the event that any appeal results in the settlement being found to be invalid, this Agreement will be null and void for all purposes in its entirety, subject to the provisions and procedures set forth in Section 5, *infra*.

d.      Within twenty-four hours of the clearance of the checks from Plaintiff's Client Trust, Plaintiff's counsel shall file a notice dismissing claims against Contractors with prejudice.

e.      Within seven (7) days of the Effective Date, in exchange for BMI's agreement to pay the amounts set forth in Section 2 including its agreement that Skanska's reasonable attorneys' fees and costs shall be paid from the Withheld Funds and Skanska's agreement to pay BMI the remaining Withheld Funds, and Plaintiff's agreement to dismiss the claims against Skanska with prejudice, Skanska agrees to dismiss its cross-claims against BMI in the Lawsuit without prejudice.  The terms of the Subcontract are continuing in nature and shall remain in full force and effect, and unless expressly stated herein are not modified by this Agreement.

        f.      The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement. The Parties shall use their reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiff's Counsel shall, with the assistance and cooperation of Contractors and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

        5.      **Termination of the Agreement**. Plaintiff or Contractors may terminate the Agreement if the Court declines to enter a Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or the Agreement does not become final for any other reason, provided that the Parties agree to work cooperatively and in good faith for a period of thirty (30) days, to address and resolve any concerns identified by the Court in declining to enter a Final Approval Order or a settlement in the form submitted by the Parties. To terminate this Agreement on the grounds specified above, the terminating Counsel (*i.e.*, Plaintiff's attorneys or counsel for either Contractor) shall give written notice to all other counsel no later than sixty (60) days after the relevant court action. In the event that this Agreement is terminated, or the settlement is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court, the Agreement and the releases contained herein shall be terminated and shall have no force or effect, Plaintiff's counsel shall return the Settlement Amount to BMI, neither Contractor shall have any obligation to make any payments under the Agreement, and no Party shall be bound by any of its terms.

        6.      **Non-Appeal.**  Plaintiff and the Contractors each agree that none of them shall file any appeal of the Court's Final Approval Order granting approval of a settlement in substantially the same form as that submitted by the Parties, or otherwise challenge such an approval order.

        7.      **Prohibition on Press and Publicity Prior to Court Approval**. The Parties shall keep the terms of this Agreement confidential until Plaintiff files the Approval Motion, as set forth in Section 4.a, *supra*. Prior to Court approval, the Parties and their counsel agree that they will not (i.) issue a press release, disclose to, or otherwise notify the media about the terms of the proposed settlement agreement; and/or (ii.) advertise any of the terms of the proposed settlement agreement through written, recorded, or electronic communication. To the extent that the Parties and/or their respective counsel are contacted by the media about this Agreement and/or the settlement it memorializes prior to Plaintiff filing the Approval Motion, they shall be permitted to respond to such inquiries only by stating that the Parties have reached a tentative settlement subject to court approval, and that the Parties and their counsel believe they have reached a fair and reasonable settlement of the disputed claims.

        The foregoing notwithstanding, at any time, including prior to Court Approval, the Parties also shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings or administrative actions in other matters a summary of the terms of this Agreement. Similarly, at any time, including prior to Court approval, Plaintiff also shall have the right to

disclose the Agreement to her tax and legal advisors and spouse (if any). For avoidance of doubt, the Parties agree that nothing in this section prevents a Party from disclosing the terms of this Agreement subsequent to Court Approval of the Approval Motion filed by Plaintiff.

The Parties further agree that nothing in this section prevents a Party from moving to enforce this Agreement.

8.    **Arm's Length Transaction**. The terms and conditions of this Agreement are the result of arm's-length negotiations between the Parties. Accordingly, this Agreement is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

9.    **No Assignment**. Plaintiff, BMI, and Skanska represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action, and any attempt to do so shall be of no force or effect.

10.    **Non-Precedential**. This Agreement does not set a precedent for any other dispute between the parties, and may not be referenced or introduced by any party in any other proceeding, except one involving Plaintiff.

11.    **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Virginia, without regard to choice of law principles, except to the extent that the laws of the United States governs any matter set forth herein, in which case such federal law shall govern.

12.    **Entire Agreement**. The Parties understand that this Agreement constitutes the entire agreement among Plaintiff and Contractors with respect to the subject matter thereof.

13.    **Waivers and Modifications**. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment.  Any failure by any Party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

14.    **Counterparts**. This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute the same agreement.

[*SIGNATURES ON FOLLOWING PAGE*]

**Maira Cribas**

Dated: 04/13/2023

**Brother's Mechanical, Inc.**

Dated: 4/17/23

**Skanska USA Building Inc. d/b/a Skanska**

Dated: 4/17/23