IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ALAN N. VARA, *et al.*, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Civil Action No. 1:22-cv-1180 MSN/IDD |
| | ) |
| | ) |
| SKANSKA USA BUILDING, INC., *et al.*, | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court on the Plaintiffs Alan N. Vara, Maira Cribos, Elier Mendoza, Marvin A.A. Sanchez, Milton Matute, Arys Obed Solano, Alejandra M. Torres, Jose Alejandro Mendoza, Miguel A. Cardona, and Ana Yanci Centeno Majano's (collectively, "Plaintiffs") Motion to Show Cause ("Motion") against Defendants DayCJ Plumbing & Mechanical Inc. ("DayCJ") and Edgar Jimenez (collectively, "remaining Defendants"). Dkt. No. 54. After the remaining Defendants repeatedly failed to follow this Court's orders, appear at scheduled hearings, or otherwise continue to defend this action, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiff's Motion, and the underlying record, the undersigned Magistrate Judge makes the following findings and recommends that Default Judgment be entered against Defendants DayCJ and Edgar Jimenez.

## I.  **INTRODUCTION**

On October 18, 2022, Plaintiffs filed this action for unpaid wages under the Federal Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 201 et seq. ("FLSA"), the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 ("VWPA"), and the Virginia Overtime Wage Act. Va. Code Ann. § 40.1-29.2 ("VOWA"), effective July 1, 2021 to June 30, 2022. Plaintiffs filed the Complaint against Defendants Skanska USA Building, Inc. ("Skanska"); Brother's Mechanical, Inc. ("BMI"); DayCJ; and Edgar Jimenez (collectively, "Defendants"). Dkt. No. 1. On April 20, 2023, Plaintiffs and Defendants Skanska and BMI filed a Joint Motion to Approve a FLSA Settlement Agreement, which the Honorable United States District Judge Michael S. Nachmanoff granted on June 7, 2023. Dkt. Nos. 28, 32. Accordingly, the Settlement Agreement between Plaintiffs and Defendants Skanska and BMI was approved, and Skanska and BMI were dismissed without prejudice, leaving DayCJ and Mr. Jimenez as the only remaining Defendants in this action. Dkt. Nos. 32, 39.

In their Complaint, Plaintiffs seek unpaid wages, unpaid overtime wages, liquidated damages, prejudgment interest, and reasonable attorney's fees and costs. Compl. ¶¶ 36-72. Plaintiffs also seek additional liquidated damages equal to triple the amount of unpaid wages, should Defendants' violation be found to be "knowing," pursuant to the VWPA and VOWA. *Id.* The Complaint brings the following four claims against Defendants: (I) Violations of the VWPA, (II) Violations of the Overtime Provisions of FLSA and VOWA, (III) Violations of the Prompt Payment Provisions of FLSA, and (IV) Violations of the Minimum Wage Provisions of FLSA. *Id.* Presently, Plaintiffs only seek damages from the remaining Defendants under the Virginia statutes, Counts I and II, less any amount already received through the settlement agreement with Skanska and BMI. Dkt. No. 64.

## A.  Jurisdiction and Venue

For a court to render a default judgment against a party, it must have (1) subject matter jurisdiction, (2) personal or *in rem* jurisdiction, and (3) be the appropriate venue for the action.

This Court has subject matter jurisdiction over this case, pursuant to 28 U.S.C. § 1331, because the Complaint raises a federal question arising from allegations of a violation of the Fair Labor Standards Act, 29 U.S.C § 201, *et seq*. 28 U.S.C. § 1331 provides that the district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.  Considering this action arises from a federal law of the United States, the FLSA, this Court retains proper subject matter jurisdiction. This Court also has supplemental jurisdiction over the remaining state law claims, pursuant to 28 U.S.C. § 1367(a), because the state law claims pertain to the same alleged failure to pay Plaintiffs' due wages, and, therefore, are so related to the federal claims that they form part of the same case or controversy.

The Court has personal jurisdiction over Defendants pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b) and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce."

Finally, venue is proper under 28 U.S.C. § 1391 because the claims arise out of work performed on a construction project in Tysons Corner, Virginia. Therefore, a substantial part of the events or omissions giving rise to the claim occurred in this district., and, therefore, venue is proper in this district.

## B.  Service of Process

Summonses were issued as to DayCJ and Mr. Jimenez on October 19, 2022. Dkt. No. 3. On October 27, 2022, Plaintiffs, through a private process server, served DayCJ by serving the summons and the Complaint on Anthony E. Cooch Jr., the registered agent of DayCJ. Dkt. No. 8

On December 20, 2022, Mr. Jimenez's attorney executed a waiver of service on behalf of Mr. Jimenez. Dkt. No. 20. Federal Rule of Civil Procedure 12(h) states that certain defenses, including insufficient service of process, are waived if they are not included in a responsive pleading. In this case, DayCJ and Mr. Jimenez filed Answers to the Complaint on November 17, 2022, and February 9, 2023, respectively. Dkt. Nos. 14, 23. Neither DayCJ nor Mr. Jimenez raised a claim regarding insufficient service of process. Dkt. Nos. 14. Therefore, the remaining Defendants effectively waived any potential defense based on improper service of process when they filed their Answer, and service is deemed proper.

### C.  Grounds for Default Judgment

Plaintiffs filed their Complaint on October 18, 2022. Dkt. No. 1. DayCJ timely submitted its Answer on November 17, 2022, through attorney Shawn Whitaker. Dkt. No. 14. Per the waiver of service, which Mr. Whitaker executed on behalf of Mr. Jimenez on December 20, 2022, Mr. Jimenez's response to the Complaint was due on February 7, 2023. Dkt. No. 20. By February 9, 2023, Mr. Jimenez had not filed a response to the Complaint. Plaintiffs sought entry of default as to Mr. Jimenez with the Clerk of Court, and the Clerk entered default as to Mr. Jimenez that same day. Dkt. Nos. 21, 22. Later on February 9, 2023, Mr. Jimenez filed his Answer to the Complaint. Dkt. No. 23. Mr. Jimenez filed neither a motion to extend the time to file his answer nor a motion to request that the entry of default be set aside.

On February 10, 2023, the District Judge issued a Scheduling Order. Dkt. No. 24. On March 1 and March 3, 2023, the parties filed their Proposed Joint Discovery Plan and Amended Proposed Joint Discovery Plan, respectively. Dkt. Nos. 25, 26. Mr. Whitaker participated in the preparation of the Joint Discovery Plans on behalf of DayCJ and Mr. Jimenez. Dkt. Nos. 25, 26. The undersigned then issued the Rule 16(b) Scheduling Order on March 6, 2023. Dkt. No. 27.

On June 7, 2023, District Judge Nachmanoff dismissed Defendants Skanska and BMI with

prejudice, pursuant to the approved settlement agreement between Plaintiffs and Skanska and BMI. Because Plaintiffs had not reached a settlement with DayCJ and Mr. Jimenez, Plaintiffs continued to pursue discovery as to the remaining Defendants. Dkt. Nos. 29, 30. In the Joint Status Report and Stipulation of Continuance, filed on May 1, 2023, Plaintiffs represented that the remaining Defendants still had not served their Fed. R. Civ. P. 26(a)(1) disclosures, which were due April 1, 2023, pursuant to the Rule 16(b) Scheduling Order and the parties' Joint Discovery Plan. Dkt. Nos. 26, 27, 30.

On May 17, 2023, Mr. Whitaker filed a Motion to Withdraw as counsel for Defendants DayCJ and Mr. Jimenez. Dkt. No. 31. Mr. Whitaker sought withdrawal because he was "not receiving the information and cooperation necessary to fulfill his duties to DayCJ and Jimenez and provide effective representation." *Id.* Mr. Whitaker notified the remaining Defendants of his intent to withdraw first in writing on April 10, 2023; again in person on May 2, 2023; and through a final written notice on May 16, 2023. *Id.* The undersigned granted the Motion to Withdraw on June 14, 2023. Dkt. No. 37. The undersigned also ordered DayCJ to have new counsel file a notice of appearance, no later than June 23, 2023, citing to the well-settled rule that a corporation may not proceed *pro se* in federal court. *Id.* (citing *Honour Tech. Grp., Inc. v. United States*, 326 F. App'x 141, 142 (4th Cir. 2009)). The undersigned also directed Mr. Jimenez to have new counsel file a notice of appearance or to inform the Court whether he will be proceeding *pro se* by June 23, 2023. Dkt. No. 37. No attorney for either of the remaining Defendants ever filed a notice of appearance, nor did they submit any other filings or otherwise contact the Court again in this matter. On July 18, 2023, the undersigned issued an Order directing the remaining Defendants to show cause for their failure to have new counsel file a notice of appearance or, in the case of Mr. Jimenez, to the inform the Court whether he would be proceeding *pro se*. Dkt. No. 42. The Order required the remaining Defendants to file a response to the Court's show cause order no later than July 26, 2023. *Id.* Additionally, the undersigned scheduled a show cause hearing for July 28, 2023. *Id.*

In addition, on June 13, 2023, Plaintiffs filed its Motion to Compel Depositions of DayCJ Plumbing & Mechanical Inc.'s Representatives and for Sanctions ("Motion to Compel"). Dkt. No. 34. Plaintiffs asked this Court to compel the depositions of DayCJ's corporate representatives after three of DayCJ's corporate representatives, including Mr. Jimenez, failed to appear for properly noticed depositions. *Id.* On July 28, 2023, the undersigned held a hearing on the Motion to Compel and on the July 18 Show Cause Order. Dkt. Nos. 44, 46. The undersigned granted Plaintiffs' Motion to Compel and ordered the remaining Defendants to attend properly noticed depositions by August 11, 2023, and to pay $4,948.10 in attorneys' fees to Plaintiffs. Dkt. No. 46. Further, the undersigned ordered the remaining Defendants to show cause for their failure to respond to this Court's July 18, 2023 Order and set August 2, 2023 as the deadline for the remaining Defendants to respond. *Id.* The Court scheduled another show cause hearing for August 4, 2023. *Id.* A copy of the July 28 Order, in addition to being mailed to the remaining Defendants' addresses, was sent to each of the remaining Defendants' email addresses. The undersigned held the second show cause hearing on August 4, 2023. Dkt. No. 50. Once again, the remaining Defendants failed to appear. *Id.*

On August 11, 2023, Plaintiffs filed a Motion to Show Cause. Dkt. No. 54. Plaintiffs asked this Court to issue an order directing the remaining Defendants to appear before the Court and show cause as to why the remaining Defendants should not be held in contempt for violating the July 28, 2023 Order. *Id.* On August 25, 2023, the undersigned held a hearing on the Motion to Show Cause. Dkt. No. 59. Because the remaining Defendants again failed to appear, the undersigned granted Plaintiffs' Motion to Show Cause and ordered the remaining Defendants to show cause why they should not be held in civil contempt for their failure to appear at the hearings on July 28, August 4, and August 25, 2023, and for their failure to respond to this Court's July 18 and July 28, 2023 Orders. The Court also ordered the remaining Defendants to show cause why the sanction for any contempt should not be default Judgment.

Dkt. No. 60. The undersigned set a deadline of August 30, 2023, for the remaining Defendants to respond to the August 25 Order, at which point, if the Defendants failed to respond, the undersigned stated that he would take the matter under advisement and issue a Report and Recommendation to the District Judge. *Id.* Defendants failed to respond to the August 25 Order by the Court-ordered August 30, 2023 deadline, or otherwise.

After the remaining Defendants failed to comply with this Court's July 18, July 28, and August 25 Orders; failed to appear at hearings on July 28, August 4, and August 25, 2023; or to otherwise continue to defend this action, the undersigned took this matter under advisement to issue this Report and Recommendation. *Id.*

On March 13, 2024, the undersigned ordered Plaintiffs to supplement its Motion to identify which claims had been resolved, pursuant to the settlement agreement between Plaintiffs and Skanska and BMI, Dkt. Nos. 28-29, and which claims Plaintiffs are still pursuing against the remaining Defendants in this matter. Dkt. No. 63. On March 20, 2024, Plaintiffs filed a Supplemental Notice, in which, Plaintiffs indicated that they are still seeking damages, pursuant to the VWPA and VOWA, against the remaining Defendants, less any amounts recovered from the settlement agreement with Skanska and BMI. *Id.* at 2. Plaintiffs represent that the settlement agreement "contemplated payment of approximately sixty-three percent (63%) of the total damage calculation under the VOWA and VWPA, not including attorneys' fees and costs." *Id.* Plaintiffs assert that as to the remaining Defendants, Plaintiffs are entitled to judgment under FLSA, but that presently, they only seek a judgment for damages under the VWPA and VOWA. *Id.* Plaintiffs currently seek the outstanding amount of liquidated damages under the VWPA and VOWA, and which were not included in the settlement agreement, as well as reasonable attorneys' fees and costs. *Id.*

7

On April 9, 2024, the undersigned ordered Plaintiffs to file another supplement to their Motion to provide additional documentation as to the number of claimed unpaid overtime hours worked by each of the Plaintiffs seeking unpaid overtime wages. Dkt. No. 65. On April 12, 2024, Plaintiffs filed a Supplement to the Motion to Show Cause, which provided specific overtime hours as well as supporting documentation for each Plaintiff claiming unpaid overtime wages. Dkt. Nos. 66, 66-1, 66-2.

## II. <u>EVALUATION OF PLAINTIFF'S COMPLAINT</u>

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." A defendant in default concedes the factual allegations of the complaint. *See, e.g.*, *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id*.

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the FRCP to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter,

accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### III. <u>FACTUAL FINDINGS AND ANALYSIS</u>

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that Plaintiffs have established the following facts. Defendants Skanska and BMI entered into a construction contract to perform plumbing and sheet metal work in Tysons Corner, Virginia ("the Project"). Compl. ¶ 1. Skanska was the general contractor on the project and BMI was one of its subcontractors. *Id.* ¶ 16. BMI used DayCJ as a subcontractor and labor broker to provide labor and perform plumbing and sheet metal work on the Project. *Id.* ¶ 1.  DayCJ is a Washington, D.C. LLC that provides plumbing services in the Washington, D.C. metropolitan area. *Id.* ¶ 6. Mr. Jimenez was the President and owner of DayCJ and controlled all of Plaintiffs' pay, scheduling, supervision, and hiring and firing. *Id.* ¶ 7. At all times relevant to this action, DayCJ and Mr. Jimenez were Plaintiffs' "employers" for purposes of the FLSA, set Plaintiffs' work schedules, determined their rate and method of pay, and repeatedly promised to pay Plaintiffs for their work on the Project. *Id.* ¶¶ 6, 17. Defendants engaged in commerce or in the production of goods for commerce within the meaning of §3(s)(l) of the FLSA (29 U.S.C. §203(s)(l)) and qualified as an "enterprise within the meaning of §3(r) of the FLSA (29 U.S.C. §203(r)). Compl. ¶ 8.  Plaintiffs were individual employees and engaged in commerce or the production of goods for commerce as required by 29 U.S.C. §§ 206-207. Compl. ¶ 8. Because the VOWA provides that "employer" and "employee" shall have the same meanings as ascribed to them under FLSA, Defendants are likewise considered "employers" for purposes of the VOWA. Va. Code Ann. § 40.1-29.2. All of the work Plaintiffs completed on the Project occurred in the Commonwealth of

Virginia. *Id.* ¶ 9.

From approximately November 1, 2021, through June 1, 2022, Plaintiffs performed plumbing and sheet metal work on the Project on behalf of Defendants. *Id.* ¶ 13. All of the Plaintiffs ceased working on the Project on or before June 1, 2022, after they had not been paid for substantial work performed on the Project. *Id.* ¶ 23. The hours worked and the wages which Defendants failed to pay as to each individual Plaintiff is as follows:

Defendants employed Plaintiff Alan N. Vara ("Vara") from approximately November 1, 2021, through May 21, 2022. *Id.* ¶ 26. Vara's agreed upon hourly wage was $25.00 per hour. *Id.* Regardless of the number of hours worked each week, Vara was never paid the overtime rate of one and one-half times his regular hourly rate for hours worked in excess of forty hours in a workweek. *Id.* For the 23-week period of November 1, 2021, through April 4, 2022, Vara worked 50 hours each week and was paid only the straight time rate of $25.00 per hour for each hour worked. Dkt. No. 66 at 2. For the weeks of April 11, 2022, through May 16, 2022, Vara was not paid at all for his 271.5 hours of work, including 41 hours of overtime. *Id.* In sum, Vara claims unpaid straight time wages in the amount of $5,762.50 and unpaid overtime wages in the amount of $4,412.50, resulting in total unpaid wages in the amount of $10,175.00. *Id.*; Compl. ¶ 26; Dkt. No. 66-2 at 24.

Defendants employed Plaintiff Maira Cribos ("Cribos") from approximately October 1, 2021, through May 7, 2022. Compl. ¶ 27. Cribos' agreed upon hourly wage was $14.00 per hour. *Id.* Regardless of the number of hours worked each week, Cribos was never paid the overtime rate of one and one-half times her regular hourly rate. *Id.*; Dkt. No. 66 at 3. For the 21-week period of October 11, 2021, through February 28, 2021, Cribos worked 75 hours each week and was paid only the straight time rate of $14.00 per hour for each hour worked, resulting in unpaid overtime wages in the amount of $5,145.00. Dkt. No. 66 at 3. For the weeks of April 11, 2022,

through May 2, 2022, Defendants failed to pay Cribos entirely for 144 hours of work she performed on the Project, resulting in unpaid straight time wages in the amount of $2,016.00. *Id.* In total, Cribos claims unpaid wages in the amount of $7,161.00. *Id.*; Dkt. No. 66-2 at 25.

Defendants employed Plaintiff Elier Mendoza ("E. Mendoza") from approximately November 1, 2021, through May 21, 2022. Compl. ¶ 28. Mendoza's agreed upon hourly wage was $25.00 per hour. *Id.* Regardless of the number of hours worked each week, E. Mendoza was never paid the overtime rate of one and one-half times his regular hourly rate. *Id.* For the 23-week period of November 1, 2021, through April 4, 2022, E. Mendoza worked 55 hours each week and was paid only the straight time rate of $25.00 per hour for each hour worked. Dkt. No. 66 at 4. For the weeks of April 11, 2022, through May 16, 2022, Defendants failed to pay Mendoza entirely for 306.5 hours of work he performed on the Project, including 66.5 hours of overtime. *Id.* In sum, E. Mendoza claims unpaid straight time wages in the amount of $6,000.00 and unpaid overtime wages in the amount of $6,806.50, resulting in total unpaid wages in the amount of $12,806.50. *Id.*; Compl. ¶ 28; Dkt. No. 66-2 at 26.

Defendants employed Plaintiff Martin A. A. Sanchez ("Sanchez") from approximately March 1, 2022, through May 21, 2022. Compl. ¶ 29. Sanchez's agreed upon hourly wage was $20.00 per hour. *Id.* Regardless of the number of hours worked each week, Sanchez was never paid the overtime rate of one and one-half times his regular hourly rate. *Id.* For the 6-week period of February 28, 2022, through April 4, 2022, Sanchez worked 55 hours each week and was paid only the straight time rate of $20.00 per hour for each hour worked. Dkt. No. 66 at 5. For the weeks of April 11, 2022, through May 16, 2022, Defendants failed to pay Sanchez entirely for 289 hours of work he performed on the Project including 51.5 hours of overtime. *Id.* at 5-6. In sum, Sanchez claims unpaid straight time wages in the amount of $4,750.00 and unpaid overtime wages in the amount of $2,445.00, resulting in total unpaid wages in the amount of $7,195.00.

*Id.*; Compl. ¶ 29; Dkt. No. 66-2 at 27.

Defendants employed Plaintiff Milton Matute ("Matute") from approximately December 1, 2021, through May 21, 2022. Compl. ¶ 30. Matute's agreed upon hourly wage was $20.00 per hour. *Id.* Regardless of the number of hours worked each week, Matute was never paid the overtime rate of one and one-half times his regular hourly rate. *Id.* For the 18-week period of December 6, 2021, through April 4, 2022, Matute worked 55 hours each week and was paid only the straight time rate of $20.00 per hour for each hour worked. Dkt. No. 66 at 6-7. For the weeks of April 11, 2022, through May 16, 2022, Defendants failed to pay Matute entirely for 298.5 hours of work he performed on the Project, including 58.5 hours of overtime. *Id.* In sum, Matute claims unpaid straight time wages in the amount of $4,800.00 and unpaid overtime wages in the amount of $4,455.00, resulting in total unpaid wages in the amount of $9,255.00. *Id.*; Compl. ¶ 30; Dkt. No. 66-2 at 28.

Defendants employed Plaintiff Arys Obed Solano ("Solano") from approximately May 9, 2022, through May 14, 2022. Compl. ¶ 31. Solano's agreed upon hourly wage was $22.00 per hour. *Id.* Defendants failed to pay Solano entirely for 16 hours of work performed on the Project during the period of his employment, resulting in unpaid wages in the amount of $352.00. *Id.*

Defendants employed Plaintiff Alejandra M. Torres ("Torres") from approximately May 9, 2022, through May 14, 2022. *Id.* ¶ 32. Torres' agreed upon hourly wage was $13.00 per hour. *Id.* Defendants failed to pay Torres entirely for 16 hours of work performed on the Project during the period of her employment, resulting in unpaid wages in the amount of $208.00. *Id.*

Defendants employed Plaintiff Jose Alejandro Mendoza ("J.A. Mendoza") from approximately November 1, 2021, through May 21, 2022. *Id.* ¶ 33. J.A. Mendoza's agreed upon hourly wage was $20.00 per hour. *Id.* Regardless of the number of hours worked each week, J.A. Mendoza was never paid the overtime rate of one and one-half times his regular hourly rate. *Id.*

For the 23-week period of November 21, 2021, through April 4, 2022, J.A. Mendoza worked 55 hours each week and was paid only the straight time wage rate of $20.00 per hour for each hour worked. Dkt. No. 66 at 8. For the weeks of April 11, 2022, through May 16, 2022, Defendants failed to pay J.A. Mendoza entirely for 306.5 hours of work he performed on the Project, including 66.5 hours of overtime. *Id.* at 8-9. In sum, J.A. Mendoza claims unpaid straight time wages in the amount of $4,800.00 and unpaid overtime wages in the amount of $5,445.00, resulting in total unpaid wages in the amount of $10,245.00. *Id.*; Compl. ¶ 33; Dkt. No. 66-2 at 29-30.

Defendants employed Plaintiff Miguel A. Cardona ("Cardona") from approximately February 21, 2022, through April 29, 2022. Compl. ¶ 34. Cardona's agreed upon hourly wage was $25.00 per hour. *Id.* During the period of Cardona's employment, Defendants failed to pay Cardona entirely for any work he completed on the project, which totaled 448 hours, including 75 hours of overtime. Dkt. No. 66 at 9. In sum, Cardona claims unpaid straight time wages in the amount of $9,325.00 and unpaid overtime wages in the amount of $2,812.50, resulting in total unpaid wages in the amount of $12,137.50. *Id.*; Compl. ¶ 34; Dkt. No. 66-2 at 31.

Defendants employed Plaintiff Ana Yanci Centeno Majano ("Majano") from approximately December 1, 2021, through May 7, 2022. Compl. ¶ 35. Majano's agreed upon hourly wage was $13.00 per hour. *Id.* Regardless of the number of hours worked each week, Majano was never paid the overtime rate of one and one-half times her regular hourly rate. *Id.* For the 18-week period of December 6, 2021, through April 4, 2022, Majano worked 55 hours each week and was paid only the straight time wage of $13.00 per hour for each hour worked. Dkt. No. 66 at 10. For the weeks of April 11, 2022, through May 2, 2022, Defendants failed to pay Majano entirely for 145.5 hours of work she performed on the Project. Dkt. No. 66-2 at 32. In sum, Majano claims $1891.50 in unpaid straight time wages and $1,755.00 in unpaid overtime

wages, resulting in total unpaid wages in the amount of $3,646.50.

### A.  Count I – Violations of the VWPA

Plaintiffs' Complaint first seeks unpaid wages under the VWPA, Va. Code Ann. § 40.1-29. The VWPA provides that "if an employer fails to pay wages to an employee in accordance with this section, the employee may bring an action, individually, jointly, [or] with other aggrieved employees . . . against the employer . . . to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest . . . and reasonable attorney fees and costs." Va. Code Ann. § 40.1-29(J).

During Plaintiffs' periods of employment with Defendants, they were "employees" of DayCJ, within the meaning of Va. Code Ann. § 40.1-29. Compl. ¶¶ 23-35. An "employer" under the VWPA "means an individual, partnership, association, corporation . . . doing business in or operating within this Commonwealth who employs another to work for wages, salaries, or on commission and shall include any similar entity acting directly or indirectly in the interest of an employer in relation to an employee." Va. Code Ann. § 40.1-2. Defendant DayCJ was therefore Plaintiffs' employer because it hired Plaintiffs to perform work on the Project in exchange for their agreed upon wages. Compl. ¶¶ 23-35.

Though Plaintiffs assert that joint employer liability should be imposed upon Mr. Jimenez under the VWPA, Dkt. No. 64, the Supreme Court of Virginia has held that individuals are excluded from joint employer liability, under the VWPA, based on actions undertaken on behalf of an actual employer. *Cornell v. Benedict*, 301 Va. 342, 349-51 (2022); *see also Senteno v. Jung*, 2024 U.S. Dist. LEXIS 31151, *10 (E.D. Va. Jan. 26, 2024). The Supreme Court of Virginia found that the choice of the word "entity," as opposed to FLSA and VOWA's use of the word "person," indicated that the Virginia General Assembly intended to employ a narrower definition of

14

"employer" under the VWPA. *Cornell*, 301 Va. 342 at 350-51. This narrower definition excludes individual persons who act directly or indirectly in the interest of an employer in relation to the employee from joint employer liability. *Id.*; *see* Va. Code Ann. § 40.1-29. Therefore, the Court cannot impose joint employer liability under the VWPA upon Mr. Jimenez.

Plaintiffs next argue that even if this Court does not find that joint employer liability can be imposed upon Mr. Jimenez under the VWPA, that Mr. Jimenez should still be held jointly liable as a subcontractor, pursuant to Va. Code Ann. § 11-4.6(C)(1). Dkt. No. 64. Va. Code Ann. § 11-4.6 defines a "subcontractor" as "any entity that has a contract to supply labor or materials to the contractor to whom the contract was awarded or to any subcontractor in the performance of the work provided for in such contract." Va. Code Ann. §§ 11-4.6(A), 2.2-4347. The use of the word "entity" in the definition of subcontractor, in light of the Supreme Court of Virginia's *Cornell* decision, indicates that imposing joint employer liability upon Mr. Jimenez, an individual, for VWPA violations, is still not appropriate. *See Id.*; *Cornell*, 301 Va. 342 at 350-51 Accordingly, the undersigned recommends finding that Mr. Jimenez cannot be held jointly liable for VWPA violations.

Plaintiffs have demonstrated that DayCJ failed to pay Plaintiffs straight wages totaling $39,905.00, not including overtime pay. Compl. ¶¶ 23-35; Dkt. No. 64. Pursuant to the VWPA, "[n]o employer shall withhold any part of the wages or salaries of any employee, except for payroll, wage or withholding taxes or in accordance with law, without written and signed authorization of the employee." Va. Code Ann. § 40.1-29(C). Because DayCJ failed to pay Plaintiffs' their wages in compliance with the VWPA, and there is no evidence in the record that any of the Plaintiffs provided to the Defendants written and signed authorization to withhold any of their wages, Plaintiffs are entitled to recover their unpaid wages. Va. Code Ann. § 40.1-29(J). Based on the

allegations in the Complaint and the supporting documentation contained in the Supplemental Notices, Defendants improperly failed to pay Plaintiffs' straight time wages in the amount of $39,905.00. Compl. ¶¶ 13-35; Dkt. Nos. 64, 66. The total amount of unpaid straight time wages owed to each of the Plaintiffs is as follows:

| Plaintiff | Regular Hourly Rate | Hours Worked without Pay | Total Unpaid Wages |
| --- | --- | --- | --- |
| Vara | $25.00 | 230.5 | $5,762.50 |
| Cribos | $14.00 | 144 | $2016.00 |
| E. Mendoza | $25.00 | 240 | $6,000.00 |
| Sanchez | $20.00 | 237.5 | $4,750.00 |
| Matute | $20.00 | 240 | $4,800.00 |
| Solano | $22.00 | 16 | $352.00 |
| Torres | $13.00 | 16 | $208.00 |
| J.A. Mendoza | $20.00 | 240 | $4,800.00 |
| Cardona | $25.00 | 373 | $9,325.00 |
| Majano | $13.00 | 145.5 | $1891.50 |
| **Total** | - | - | **$39,905.00** |

Compl. ¶¶ 13-35; Dkt. Nos. 66, 66-2. Accordingly, the undersigned recommends a finding that Plaintiffs have established violations of the VWPA as to Defendant DayCJ for their failure to pay wages to Plaintiffs.

### *Relief*

Plaintiffs have established that DayCJ failed to pay straight time wages to Plaintiffs in the collective amount of $39,905.00. Compl. ¶¶ 13-35; Dkt. No. 64. Va. Code Ann. § 40.1-29(J) further provides that "[i]f the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall award the employee an amount equal to triple the amount of wages due." A person acts "knowingly" if the person, with respect to the information, "(i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information." Va. Code Ann. § 40.1-29(K). The allegations in the Complaint, which the remaining

Defendants concede by default, demonstrate that the remaining Defendants knowingly failed to pay Plaintiffs' wages. DayCJ and its president and owner, Mr. Jimenez, were directly responsible for controlling the pay, scheduling, supervision, timekeeping, and hiring and firing of Plaintiffs. Compl. ¶ 7. Mr. Jimenez and DayCJ retained all of Plaintiffs' time records and repeatedly promised to pay Plaintiffs for their work if they continued to work on the Project. *Id.* ¶ 17. This control over Plaintiffs' pay, work schedule, and timekeeping, as well as Mr. Jimenez's repeated promises to pay, establishes that the remaining Defendants either had actual knowledge of the failure to pay Plaintiffs' wages, or, at minimum, that they acted in deliberate ignorance of the truth or falsity of that fact. Accordingly, the undersigned recommends finding that the remaining Defendants knowingly violated the VWPA. Therefore, Plaintiffs are entitled to liquidated damages in an amount equal to triple the amount of unpaid wages, which is $119,715.00. Dkt. No. 64.

In the settlement agreement reached between Plaintiffs and Defendants Skanska and BMI, Plaintiffs represent that they recovered all of the unpaid straight time wages and $79,810.00 in liquidated damages, pursuant to Plaintiffs' VWPA claim. Dkt. Nos. 29, 64. Presently, Plaintiffs seek the outstanding liquidated damages to which they are entitled under the VWPA, which is $39,905.00. Therefore, the undersigned recommends finding that Defendant DayCJ is liable to Plaintiffs for liquidated damages in the amount of $39,905.00.

## B. Count II – Violations of the VOWA

In order to establish a violation of the VOWA for non-payment of overtime hours, a plaintiff must show that: (1) the plaintiff was employed by the defendant; (2) the plaintiff was engaged in commerce or in the production of goods for commerce; (3) the plaintiff worked over forty hours per work week; (4) the plaintiff was not compensated at a rate of 1.5 times his regular rate for each hour worked in excess of forty hours for each work week; and (5) none of the

exemptions in 29 U.S.C. § 213 apply to the plaintiff's position.  *See* 29 U.S.C. § 207. Pursuant to VOWA, "[a]ny employer that violates the overtime pay requirements of the federal Fair Labor Standards Act . . . shall be liable to the employee for the applicable remedies, damages, or other relief available under the federal Fair Labor Standards Act." Va. Code Ann. § 40.1-29.2. Accordingly, the analysis of the overtime wage violations under VOWA is identical to that under FLSA.

Here, the facts set forth in the Complaint establish that Plaintiffs were employed by Defendants at various times during the period of approximately November 1, 2021, through June 1, 2022. Compl. ¶¶ 13, 23-35. During this period, Plaintiffs were employees of Defendants within the meaning of 29 U.S.C. § 203(e)(1) and Va. Code Ann. § 40.1-29.2. Second, by performing work on the Project on Defendants' behalf, Plaintiffs were engaged in commerce, pursuant to FLSA. 29 U.S.C. §§ 203(s), 207(a), 215(a); Compl. ¶ 8.

Third, Plaintiffs Vara, Cribos, E. Mendoza, Sanchez, Matute, J.A. Mendoza, Cardona, and Majano reported occasionally or regularly working in excess of forty hours each week but allege that they were never compensated at the statutorily mandated rate for overtime pay of one and one-half times their regular rate for each hour worked in excess of forty hours per workweek, as FLSA and VOWA require. Compl. ¶¶ 23-35; 29 U.S.C. § 207; Va. Code Ann. § 40.1-29.2.  Therefore, as to the fourth element, Plaintiffs have established that they were not compensated at a rate of one and one-half times their regular rates, but rather, except for Cardona who was never paid at all, were only paid at their regular rate, until approximately April 11, 2022, when Defendants failed to pay any wages to Plaintiffs. Compl ¶¶ 23-35. The overtime claims as to each individual Plaintiff is as follows:

| Plaintiff | Regular Hourly Rate | Overtime Rate (Regular Rate X 1.5) | Overtime Hours (Plaintiff was paid regular rate) | Overtime Hours (Plaintiff not paid at all) | Overtime Pay Owed |
|---|---|---|---|---|---|
| Vara | $25.00 | $37.50 | 230 | 41 | $4,412.50 |
| Cribos | $14.00 | $21.00 | 735 | 0 | $5,145.00 |
| E. Mendoza | $25.00 | $37.50 | 345 | 66.5 | $6,806.25 |
| Sanchez | $20.00 | $30.00 | 90 | 51.5 | $2,445.00 |
| Matute | $20.00 | $30.00 | 270 | 58.5 | $4,455.00 |
| J.A. Mendoza | $20.00 | $30.00 | 345 | 66.5 | $5,445.00 |
| Cardona | $25.00 | $37.50 | 0 | 75 | $2,812.50 |
| Majano | $13.00 | $19.50 | 270 | 0 | $1,755.00 |
| **Total** | - | - | - | - | **$33,276.25** |

Dkt. Nos. 66, 66-2. Finally, none of the exemptions provided in FLSA apply to this case.

Based on the allegations in the Complaint, Plaintiffs Vara, Cribos, E. Mendoza, Sanchez, Matute, J.A. Mendoza, Cardona, and Majano, are collectively owed $33,276.25 in unpaid overtime wages. *Id.* Accordingly, the undersigned Magistrate Judge recommends finding that Plaintiffs have adequately stated a claim against the remaining Defendants for their failure to pay overtime wages due to Plaintiffs, pursuant to the VOWA and FLSA.

### *Relief*

Plaintiffs have established that Defendants failed to pay Plaintiffs overtime wages in the collective amount of $33,276.25. *See* Compl. ¶¶ 13-35; Dkt. No. 64. Va. Code Ann. § 40.1-29(J) further provides that "[i]f the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall award the employee an amount equal to triple the amount of wages due." Pursuant to Va. Code Ann. § 40.1-29(K), which defines "knowingly" under the VOWA, Plaintiffs have sufficiently demonstrated that the remaining Defendants knowingly failed to pay Plaintiffs' overtime wages as required under the VOWA and FLSA. Because the remaining Defendants controlled Plaintiffs' pay, work schedule, and

timekeeping, as well as Mr. Jimenez's repeated promises to pay Plaintiffs if they continued to work on the Project, Plaintiffs have sufficiently demonstrated that the remaining Defendants failed to pay Plaintiffs their due overtime wages, and that, at minimum, the remaining Defendants acted in deliberate ignorance or reckless disregard of the truth or falsity of that fact. Compl. ¶¶ 7, 17; *see* Va. Code Ann. § 40.1-29(K). Accordingly, the undersigned recommends finding that the remaining Defendants knowingly violated the VOWA. Accordingly, Plaintiffs are entitled to liquidated damages in an amount equal to triple the amount of unpaid wages, which is $99,828.75.

In the settlement agreement reached between Plaintiffs and Defendants Skanska and BMI, Plaintiffs represent that they recovered all of the unpaid overtime wages and $33,276.00 in liquidated damages on Plaintiffs' VOWA claim. Dkt. Nos. 29, 64. Presently, Plaintiffs seek the outstanding liquidated damages to which they are entitled under the VOWA, which is $66,552.75. Therefore, the undersigned recommends finding that the remaining Defendants violated the VOWA and are liable to Plaintiffs for liquidated damages in the amount of $66,552.75.

### C. Attorney's Fees and Costs

Lastly, Plaintiffs seek a total of $15,191.10 in attorney's fees and costs. Dkt. Nos. 64, 64-1. This Court previously granted two of Plaintiffs' requests for attorney's fees, pursuant to Plaintiffs' Motion to Compel, Dkt. Nos. 34, 46, and pursuant to the instant Motion, Dkt. Nos. 55, 60. On the Motion to Compel, the undersigned ordered the remaining defendants to pay $4,948.10 in attorney's fees to Plaintiffs. Dkt. No. 46. On the instant Motion, the undersigned ordered Plaintiffs to file a supplement on attorney's fees and costs, which Plaintiffs did on August 25, 2023. Dkt. Nos. 58, 60. In the August 25 Supplemental Notice and the supporting Declaration of Jacqueline C. Canzoneri, and the exhibits thereto, Plaintiffs represent that they incurred $4,572.00 in attorney's fees and $1,610.00 in costs, totaling $6,362.00, in preparing for and attending the

properly noticed depositions of the remaining Defendants. Dkt. Nos. 58, 58-1, 58-2.

The VWPA and VOWA also provide that if an employer fails to pay wages to employees as required, the court shall award reasonable attorney's fees and costs. Va. Code Ann. § 40.1-29. Accordingly, Plaintiffs also request the remaining attorney's fees and costs incurred in pursuing this action against the remaining Defendants. Compl. at 19; Dkt. No. 64. In support of this request, Plaintiffs submitted a Supplemental Notice on March 20, 2024, with exhibits containing a detailed report of attorney's fees and costs incurred in this action, which consist of $3,096.00 in attorney's fees and $785.00 in costs, totaling $3,881.00. Dkt. Nos. 64, 64-1. The total time spent by counsel on this matter as to the remaining Defendants, and not including time spent toward attorney's fees which the undersigned previously awarded, was 10.75 hours at an hourly rate of $288.00. *Id.* Having reviewed the supporting documentation, the undersigned finds these rates to be consistent with reasonable rates charged in the Eastern District of Virginia for like matters and the number of billable hours spent on the case to be reasonable. Therefore, the undersigned Magistrate Judge recommends an award of $3,881.00 in attorney's fees and costs, pursuant to the VWPA and VOWA, in addition to the $11,310.10 in attorney's fees and costs already awarded. The undersigned, therefore, recommends a total award of attorney's fees and costs in the amount of $15,191.10.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge recommends entry of default judgment in favor of Plaintiffs and against Defendant DayCJ Plumbing & Mechanical Inc. on Count I of the Complaint, against Defendants DayCJ Plumbing & Mechanical Inc. and Edgar Jimenez on Count II of the Complaint, and that all other remaining claims be dismissed with prejudice. Accordingly, the undersigned recommends finding that DayCJ Plumbing & Mechanical

Inc. is liable to Plaintiffs in the amount of $33,276.00, pursuant to Count I, and that DayCJ Plumbing & Mechanical Inc. and Edgar Jimenez are jointly and severally liable to Plaintiffs in the amount of $66,552.75, pursuant to Count II. In sum, Plaintiffs are entitled to damages in the total amount of $106,457.75, which consists of the remaining liquidated damages pursuant to the VWPA and VOWA. The undersigned further recommends awarding attorneys' fees and costs in the amount of $15,191.10.

### V. NOTICE

**By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendants at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

/s/ Ivan D. Davis
_____

May 31, 2024                                        Ivan D. Davis
Alexandria                                          United States Magistrate Judge